ABELL *v.* ALBERT F. GOETZE, INC. ET AL.

[No. 23, September Term, 1966.]

434

*Decided February 13, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and FINAN, JJ.

*James A. Ehrhart* for appellant.

*G. Joseph Sills, Jr.,* with whom were *R. Roger Drechsler* and *Lord, Whip, Coughlan & Green* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

On February 4, 1964, appellant, Robert E. Abell, was an employee in the meat packing business of appellee, Albert F. Goetze, Inc., hereinafter referred to as the Employer. On April 28, 1964, the appellant filed a claim with the Workmen's Compensation Commission, hereinafter referred to as the Commission, alleging that on February 4, 1964, he sustained an accidental injury in the course of his employment. The Commission found that the appellant had sustained the alleged injury in the course of his employment and made an award. On ap-

peal to the Superior Court of Baltimore City, the finding of the Commission was reversed. This appeal followed.

According to the appellant's testimony, while working in the Employer's sanitation department on the date of the alleged accident, he was informed that there was a can of grease to be removed from the plant cafeteria; he went to the cafeteria and picked up a five-gallon can of fat. As he was leaving, carrying the can of fat, he slipped on grease, which was on the floor, wrenching his left knee. The appellant further testified that after the alleged accident he went to the company first-aid station and reported the occurrence to Dr. McElwain, the company physician, and treatment was prescribed. It appears from the record that appellant on three previous occasions had sustained injuries to his left knee, while working for his present employer. The first occurred on June 6, 1959, while lifting a tank to wash it, the second on May 7, 1960, when he stepped into a hole while cutting grass and wrenched his knee, and the third on March 8, 1961, when he wrenched his knee while lifting a tank. However no claim was ever filed for these injuries. Counsel for the Employer and Insurer on cross-examination of appellant, adduced over objection, evidence concerning a hand injury sustained on September 6, 1962, a claim for which was filed February 29, 1964.

The only other witness before the lower court was Julia S. McBride, the company nurse. She testified that on February 4, 1964, the appellant was called to the medical department "for evaluation of his hand injuries" and the appellant never mentioned to her the alleged knee accident of that date. She further testified that she has the duty of keeping records of injuries to company employees occurring on the job. Each employee has a medical card and occupational injuries are noted on the face of the card, while non-occupational illnesses and miscellaneous complaints are noted on the reverse side of the card. It was the nurse's testimony that the appellant's medical card showed a notation "soreness in the left knee joint" on the reverse (non-occupational) side of the card, dated February 4, 1964, and nothing on the front (occupational) side of the card for that date.

It was stipulated by counsel for both sides that had Dr. Mc-

Elwain been called as a witness he would have testified that on February 4, 1964, the appellant came to the medical department at his request for evaluation of a previous hand injury and "[a]t this time he [appellant] again complained of soreness of his left knee joint." The Doctor would have further testified:

> "It is interesting to note that the patient gave as the date of injury February 4, 1964, on his report, but he mentioned this only casually having come to the Medical Department at that time for evaluation of an injury of September 6, 1962."

The lower court, sitting without a jury, found as a fact that appellant "did not receive an injury on the 4th of February in the course of his employment, * * *." The judge in the court below relied on the testimony of nurse McBride, the stipulation as to Dr. McElwain's testimony had he been called as a witness, and the fact that on February 29, 1964, appellant filed a written claim with the Commission concerning the previous hand injury without making claim for the alleged knee injury of February 4, 1964.

The appellant contends: (1) that the finding of the Commission is presumed to be prima facie correct and that the appellee failed to introduce sufficient evidence to overcome this presumption and hence the lower court erred in reversing the Commission; and (2) the lower court erred in admitting evidence as to the occurrence of and the filing of a claim for an unrelated injury, and which testimony allegedly prejudiced the appellant's case.

I

The proposition that on appeal the decision of the Workmen's Compensation Commission is presumed to be prima facie correct is clearly set forth in the Statute. Art. 101, § 56(c) Code (1957) *Richard F. Kline, Inc. and Great American Insurance Co. v. Courtney C. Grosh,* 245 Md. 236, 226 A. 2d 147 (1967).

The main thrust of the appellant's argument is based on the assumption that as long as there is some evidence to support the decision of the Commission, it is error for the Court to reverse it. In occupational disease cases, the Statute clearly provides

that all findings of fact by the Commission shall be final. Art. 101, § 56(a) (1966 Cum. Supp., Code (1957)). However, this is not an occupational disease case. Accordingly, the inference that so long as there is sufficient evidence to support the Commission's findings that it cannot be reversed is not to be drawn; otherwise there would be little meaning to the law that upon appeal Workmen's Compensation cases are to be tried *de novo*.

In *Smith v. State Roads Comm.,* 240 Md. 525, 533-34, 214 A. 2d 792, 796 (1965), Judge McWilliams reviewed the authorities on this matter and speaking for the Court, stated:

> "Maryland, on the other hand, in common with sixteen other states, authorizes a review of the facts as well as the law. Our statute contemplates a trial which essentially is *de novo*. *Richardson v. Home Mutual,* 235 Md. 252, 201 A. 2d 340 (1964).
>
> "We are urged to consider two cases from New Jersey where, as in Maryland, appeals are tried *de novo*. In *O'Reilly v. Roberto Homes,* 31 N. J. Super. 387, 107 A. 2d 9 (1954), despite a conflict in the testimony in regard to tire marks and the fact of intoxication, the Commission *refused* to award compensation. The court reversed the Commission and found in favor of the claimant. Because there was competent believable evidence sufficient to sustain the court's finding it was not disturbed by the appellate court. Judge Foster, the trier of facts in this case, also reversed the Commission. If the evidence supporting his findings is legally sufficient then, if we follow the New Jersey court, we should not disturb his findings."

The burden is upon the appellant to overcome the presumption that the decision of the Commission is prima facie correct, and he must do this to the satisfaction of the trier of the facts. *Williams Constr. Co. v. Bohlen,* 189 Md. 576, 580, 56 A. 2d 694, 696 (1948). This can be done by submitting new evidence, by relying on all or a part of the record before the Commission, by argument as to the probative value of the evidence and by argument as to the credibility of witnesses. All of these matters are legitimate elements of a trial *de novo* which counsel

438

may exercise to the fullest legitimate means to overcome the existing presumption. In *Williams Constr. Co. v. Bohlen, supra,* Judge Delaplaine aptly referred to this as "a burden of persuasion, and not necessarily a burden of additional proof." Accord *Blake Construction Company, et al. v. Dorita Wells,* 245 Md. 282, 225 A. 2d 857 (1967).

In the instant case the court below, as the trier of facts, had the opportunity to hear the testimony of the witnesses and observe their demeanor. That great weight was given to the credibility of the witnesses was obvious from the language employed in the oral opinion of the court, Judge Powers stating:

> "I conceive my function to be whether or not I believe that Mr. Abell here on the 4th of February, 1964 received an injury to his knee in the course of his employment. He says he did, and he says he reported it, *and there is a presumption in favor of the finding of the State Workmen's Compensation Commission when they concluded that he did.*
>
> "However, on the other side we have the following, (1) It was not understood by the registered nurse, Miss McBride, that he was reporting an accident that occurred on that day, it was not understood by the doctor, that he was reporting an accident that occurred that day, he only incidentally mentioned about his knee, and that, in itself, if there are reasons to the contrary would not be decisive, but combined with that we have the fact that on the 28th day of February a written claim was made for an injury that predated that, without any claim made whatsoever for the injury to his knee, so my conclusion is that he did not receive an injury on the 4th of February in the course of his employment, so on that issue, that is my finding, and therefore the award of the Workmen's Compensation Commission will be reversed." (Emphasis supplied.)

It is also interesting to note that the first notation entered on the appellant's dispensary record indicates an injury to his left knee on June 15, 1959, which occurred while he was letting

down a tank that had been upended. Again on March 8, 1961, his dispensary record reveals an injury to his left knee which occurred when he slipped helping to lift a tank. In the trial of the case when explaining the injury of February 4, 1964, for which he seeks compensation, he stated that he was carrying a can of fat in the cafeteria when he slipped on some grease on the floor and wrenched his knee. However, it was brought out on cross-examination that when he filed his claim with the Commission on April 28, 1964, reporting the injury for which he now seeks compensation, the claim recites that: "Claimant twisted left knee when lifting tank to wash out same." On direct examination he elaborated on his injury to his knee which occurred on June 15, 1959, as having occurred in the washroom stating, "I was attempting to lift a tank to be washed out— you see we have other tanks there—I would say approximately the size of that desk over there with four legs on it, and in order to drain the water out of it you have to lift that up on one end, * * *." It was obvious that the appellant was somewhat confused on his facts when either filling out his claim for Workmen's Compensation or at the time of his testifying in court. In any event the trier of facts was obviously influenced by the vagueness of his testimony as to just what he was doing at the time the alleged accidental injury occurred. We certainly cannot say Judge Powers' finding, that the appellant did not receive an injury on the 4th of February in the course of his employment, was clearly in error and we so hold. Maryland Rule 886 a; *Talley v. Dept. of Correction,* 230 Md. 22, 185 A. 2d 352 (1962).

II

The appellant argues that the lower court erred in admitting evidence as to the occurrence of an injury to the appellant's hand which had occurred on September 6, 1962, and a claim for which was filed with the Commission on February 29, 1964.

We feel that it was proper for the court to have admitted this evidence. The record reveals that when the appellant went to the dispensary on February 4, 1964, the date of the alleged injury to his left knee, that he had been called to the dispensary that day by Dr. McElwain for an evaluation of the previous injury to his hand. Therefore the existence of the injury to his hand

was pertinent evidence in this case as it was an integral part of the testimony surrounding his visit to the dispensary on the date of the alleged accidental injury to his knee.

Furthermore, the testimony which was introduced in evidence concerning the fact that the claimant filed a claim on February 29, 1964, for the hand injury which had occurred on September 6, 1962, was properly admissible. This testimony would logically raise an inference as to why the appellant had not at the same time filed a claim for his injury to his left knee, which he alleged had occurred on February 4, 1964, instead of waiting until April 28, 1964, some two months later. This inference standing alone and unanswered might have been prejudicial to the appellant; however we think it was a fair and relevant question to be raised on cross-examination and the appellant was given the opportunity to state the reason why he had not filed his claim prior to April 28, 1964. His reason was: "At that time I figured that it would do like it did before, flare-up for a couple of days, because the (sic) first I didn't feel—because Dr. McElwain had treated me and it seemed to be coming along nicely."

Also, the record shows that the question directed to the appellant on cross-examination as to why he did not file his claim for the knee injury of February 4, at the same time he filed his claim for his hand injury, which had occurred previously, was the subject of an objection. The question was then rephrased by appellees' counsel and the record shows there was no objection offered to the rephrased question, nor was any request for a ruling made by appellant's counsel on the objection to the original question. Under these circumstances there was nothing on the face of the record pertinent to the admissibility of this evidence properly reviewable by this Court. Maryland Rule 522 d 2; *Rose v. State,* 240 Md. 65, 69-70, 212 A. 2d 742, 744-45 (1965).

For the reasons set forth above, the judgment will be affirmed.

*Judgment affirmed, with costs.*