■ In the Matter of the Claim of THOMAS L. ZENGOTITA, Respondent, v NEW YORK TELEPHONE COMPANY, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.—Appeal from a decision of the Workmen's Compensation Board, filed March 25, 1976. Claimant, a 28-year-old switchman employed by the self-insured employer, injured his back and left leg while playing in a preseason softball game on an employer-sponsored team, and the sole question presented for our determination is whether substantial evidence supports the board's determination that his injury arose out of and in the course of his employment. It is undisputed that, commencing on May 5, 1975, "league" games were to begin in a softball league organized and controlled by the appellant and in which participation by employees is in

the ordinary course of the employment. A management representative of the appellant testified that he acted as "commissioner" of the league and arranged schedules and provided equipment and money for refreshments for the participants. The league was limited to participants employed by the appellant. By any test the league itself is an incident of the employment and had the injury occurred in a "league" game the finding of compensability would be sustained. Upon this record there is no evidence which would have suggested a finding that the practice session a week before the official commencement of "league" play was not as much an incident of the employment as league play itself. The claimant was injured while playing with a league team as a member thereof and in any event common experience would indicate that a team does not spring into existence on May 5, 1975 ready to play, but must be recruited, player qualification or ability ascertained, and teamwork practiced. While the sponsorship or active control by the appellant did not necessarily include any direct activity or actions by it in regard to employee enlistment into teams and preparation for official competition, there is no evidence that such activity was not considered by management to be an ordinary part of the competition provided by official "league" games. If there were any doubt as to this preseason game being a natural incident of the employment, the "commissioner" conceded that prior to "league" play "Normally * * * the better teams will work out." It would seem impossible for "teams" to work out prior to the official commencement of league games if in fact there were no "teams" before May 5, 1975. The benefit to the employer was as much an incident of the team practice as it was of "league" games in the context of this case. It is the employment aspect of the nonwork activity that gives rise to liability and not the direct and official involvement of management at the moment of injury (see *Matter of Dorman v New Process Gear Div. Chrysler Corp.,* 44 AD2d 8, affd 35 NY2d 975). Based upon the present factual pattern and well-established legal precedent, the board's decision is premised on substantial evidence, and, therefore, should be affirmed. Decision affirmed, with costs to the Workmen's Compensation Board against the self-insured employer. Sweeney, J. P., Kane, Mahoney and Herlihy, JJ., concur; Main, J., dissents and votes to reverse in the following memorandum: Main, J. (dissenting). I respectfully dissent. I agree, of course, with the majority's conclusion that, had the injury occurred during a regularly scheduled league game, there would be no question but that the injury arose out of and in the course of employment. However, such was not the case here where the claimant was injured in a preseason practice game arranged totally by the players themselves without any involvement by appellant and over which activity the employer had no control. In the landmark case of *Matter of Tedesco v General Elec. Co.* (305 NY 544), the Court of Appeals enunciated five significant factors which were to be considered in determining the issue of whether or not a given activity is within the scope of employment. These were: (1) were the activities upon the employer's premises; (2) was financial support by the employer substantial or slight; (3) was the control by the employer dominant; (4) did advertising and business advantage benefit the employer; and (5) could the employer have halted the activity at any time. The record here shows that the activity did not take place on the employer's premises; that there was no financial support of the activity; that the employer exercised no control; that no advertising or business advantage inured to the employer and that the employer could not have halted the program. The majority and the board base their determination upon an assumption that is unwarranted on this meagre record and

unsupported by substantial evidence. Such a holding represents a departure from established principles of long standing *(Matter of Tedesco v General Elec. Co., supra)*. Accordingly, I would reverse and dismiss the claim.