486 A.2d 804

Robert C. TURNER

v.

STATE of Maryland, OFFICE OF the PUBLIC DEFENDER et al.

No. 568, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Jan. 14, 1985.

Myles R. Eisenstein, Baltimore, for appellant.

Howard P. Miller, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen. and Richard Teitel, Asst. Atty. Gen., Baltimore, on brief), for appellees.

Argued before GILBERT, C.J., and WILNER and ROSA-LYN B. BELL, JJ.

GILBERT, Chief Judge.

This case arises from yet another hard fought battle between the "Public Defenders" and the "State's Attorneys." The facts from which this particular litigation ensued occurred on August 19, 1982, on the softball playing field, not in the courtroom where the parties engage in "hardball."

At the time of the incident, Robert C. Turner, a member of the Bar, was employed in the Office of the Public Defender as an attorney. Turner was also a member of the "Public Defenders," a team that played in the "Lawyer's League" of Baltimore.

From the record we learn that in the game Turner, unlike the legendary Flynn,[1] was not left "a-huggin third," [2] but rather fell while "rounding third." As a result of the fall, Turner sustained a dislocated right shoulder, which in turn led him to seek recompense from the Workmen's Compensation Commission. There, Turner homered before the Commission, which found that he had incurred an accidental injury arising out of the course of his employment. The question of permanent partial disability, *vel non*, was not passed upon by the Commission at that time, but the public defender was ordered to pay Turner's medical bills that were attributable to the injury.

Believing that the Commission misconstrued the law and the facts, the public defender appealed to the Circuit Court for Baltimore City where the matter was tried before Judge Solomon Baylor, sitting without a jury. There Turner struck out; and the public defender scored.

Aggrieved by Judge Baylor's decision, Turner has appealed. He puts two issues to us and asks that we reverse the trial court and reinstate the Commission's award. We shall answer the issues in inverse order to the manner in which they have been posited.

## I.

Turner asserts that, "[t]he trial judge committed reversible error in substituting its [sic] judgment for that of the Workmen's Compensation Commission." Turner is flat out wrong.

Md.Ann.Code art. 101, § 56(a) mandates that in all appeals from workmen's compensation decisions the circuit court shall determine

1) whether the Commission exceeded its powers;

---

**1.** Ernest Lawrence Thayer, *Casey at the Bat* (1863–1940), line 4, st. 4 [1888].

**2.** *Ibid.*

2) whether the Commission "justly considered all the facts concerning the injury";

3) whether the Commission misconstrued the law and facts.

In all appeals to the circuit court, the decision of the Commission is "prima facie correct and the burden of proof" in establishing otherwise "is on the party attacking" that decision. Md.Ann.Code art. 101, § 56(c).

■ We have previously explained and we reiterate here that the phrase "prima facie correct and the burden of proof," as used in § 56(c) and applied to accidental injuries, means only the burden of persuasion, *i.e.*, if the mind of the trier is in a state of equipoise as to the evidence, then the decision of the Commission is to be affirmed. *Dent v. Cahill*, 18 Md.App. 117, 124, 305 A.2d 233, 237 (1973); *see also Blake Construction Co. v. Wells*, 245 Md. 282, 225 A.2d 857 (1967); M. Pressman, *Workmen's Compensation in Maryland* § 4–25(2) (1970 & Supp.1980).

■ We made clear in *Dent* that the fact finder "may disagree with the Commission's interpretation of the facts and arrive at a different conclusion ...." 18 Md.App. at 127, 305 A.2d at 239. Unlike many other administrative law bodies, such as the Public Service Commission, the Insurance Commission, and zoning boards, where the appeal to circuit court is usually determined on the basis of the record made at the hearing before the agency, workmen's compensation appeals are heard *de novo*.

Admittedly, the case law with respect to workmen's compensation appeals has heretofore been far from crystalline. Prior to June 1, 1983, different standards of review were employed depending upon whether an accidental injury or an occupational disease was at issue.[3]  *See Montgomery*

---

**3.** The continued vitality of this distinction is in doubt in view of the abolition of the Medical Board of the Workmen's Compensation Commission. *See* former Md.Ann.Code art. 101, § 29, repealed by

*Ward & Co. v. Bell,* 46 Md.App. 37, 41–42, 415 A.2d 636, 638 (1980).

As Judge Wilner pointed out in *Montgomery Ward,* 46 Md.App. at 42, 415 A.2d at 638, part of the confusion is attributable to a single misstatement[4] in *Frank v. Baltimore County,* 284 Md. 655, 658, 399 A.2d 250, 252 (1979). There the Court of Appeals said:

> "A court, therefore, may reverse a commission ruling only upon a finding that its action was based upon an erroneous construction of the law or facts . . . ."

There the Court was articulating the test applicable to the review of occupational disease cases, but *Frank* dealt with the offset provision in Md.Ann.Code art. 101, § 33(c)–(d) as it applied to a municipal employee who was retired due to an accidental injury. *Frank,* 284 Md. at 656–57, 399 A.2d at 251–52. It appears that some members of the bar have interpreted *Frank* as establishing the standard of review to be applied in all accidental injury appeals. That is not the law.

There are, or were, two separate tests applied in appeals from the Commission. If the appeal is from the Commission and the Medical Board, then under *Martin Marietta Corp. v. Leius,* 237 Md. 217, 219–20, 205 A.2d 792, 793 (1965), the Commission and Medical Board's decision "is not to be reversed by the courts if there was before it evidence legally sufficient to support that determination, even though a contrary finding reasonably could have been made and even if the reviewing court, had the choice been its to make, would have made it." *See also Maryland Bureau of Mines v. Powers,* 258 Md. 379, 382–83, 265 A.2d 860, 862 (1970). *See also Big Savage Ref. Corp. v. Geary,* 209 Md. 362, 121 A.2d 212 (1956). A short explanation of the function of the Medical Board's role within the Workmen's

---

1982 Md.Laws, ch. 521, effective June 1, 1983. Nevertheless, that matter is not presently before this Court, and we do not decide it.

**4.** *See* n. 3, *supra.*

Compensation Commission may be found in M. Pressman, *Workmen's Compensation in Maryland* § 5–4 (1970 & Supp.1980).

■ Appeals from the Commission in its determinations with respect to accidental injuries, are, as we have previously said, tried *de novo*. That being the situation, the test applicable to the Commission's findings based on those of the Medical Board is neither controlling nor relevant.

■ It is unfortunate that the courts have sometimes unwittingly interchanged the two separate and distinct tests. *See e.g., Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979), and this Court's opinion in *Zentz v. Peters,* 11 Md.App. 1, 272 A.2d 430 (1971). There, in an accidental injury case, we incorrectly applied the occupational disease test. We were wrong and to that extent we overrule *Zentz v. Peters,* 11 Md.App. at 8, 272 A.2d at 434.

Lest there be any doubt as to what test is to be applied in appeals from the Commission to the courts, we repeat here what Judge Wilner wrote in *Montgomery Ward v. Bell,* 46 Md.App. 37, 42, 415 A.2d 636, 638 (1980):

"(1) Where the case involves an accidental injury, the court must determine three things: (i) did the Commission justly consider all the facts concerning the injury; (ii) did the Commission exceed its statutory authority; and (iii) did the Commission misconstrue the facts or the law applicable to the case?

(2) Where the case involves an occupational disease, the court looks only to whether the Commission misconstrued the applicable law. Included within that inquiry, however, is whether there was substantial (or legally sufficient) evidence to support the Commission's factual conclusions, that being, in essence, an issue of law rather than of fact. *See Burdock v. Kaiser Aluminum,* 22 Md.App. 631, [325 A.2d 171] *cert. den.* 272 Md. 738 (1974), *and compare ABC Day Care Center v. Browne,* 17 Md.App. 470, [302 A.2d 708] (1973)."

■ Thus, we conclude that Judge Baylor was safe in substituting his ruling on the facts for that of the Commission. *Dent v. Cahill*, 18 Md.App. 117, 305 A.2d 233 (1973).

## II.

■ We rephrase Turner's other issue to read: Did the circuit court on appeal misconstrue the facts and law applicable to the instant matter?

Turner vigorously urges that the standard against which compensable recreational injuries should be measured is *Sica v. Retail Credit Co.*, 245 Md. 606, 227 A.2d 33 (1967). Although *Sica* provides the proposition of law to be applied to the matter at bar, the factual backdrop in *Sica* is readily distinguishable from that presented by Turner.

While swimming at an annual picnic sponsored by his employer, Sica suffered a severe injury. The court observed that the annual fete was an express term of Sica's employment. Moreover, the employer encouraged and authorized the establishment of a committee of employees charged with planning and organizing the picnic. Furthermore, the employer paid all of the expenses that the picnic entailed and deducted them as business overhead. Despite the fact that the accident occurred on a non-working day, Sica's accidental injury was determined to have arisen out of and in the course of his employment and it was, therefore, compensable.

A factual pattern remarkably similar to that of *Sica* is found in *Selected Risks Insurance Co. v. Willis*, 266 Md. 674, 296 A.2d 424 (1972).[5] Willis drowned at a picnic held by the volunteer fire company in which he was an active member. The facts there showed that the picnics were annual events, " 'organized, sponsored and made to occur' by the fire company, and that the members of the company

---

5. *Willis* dealt with an insurance claim rather than a workmen's compensation claim. It turned, nevertheless, upon whether the death occurred "by reason of and in the course of" the claimant's employment. *Willis*, 266 Md. at 675, 296 A.2d at 424.

were expected to attend 'unless they had a reasonable reason not to so attend.' " The chief of the company had asked Willis to assist with preparations on the day of the picnic. *Id.,* 266 Md. at 676, 296 A.2d at 425. Willis's injury was found to have occurred by reason of and in the course of his employment.[6]

Judge Oppenheimer, writing for the Court in *Sica,* stated that there have been many cases in other jurisdictions involving the question of whether certain social activities are work-related and, hence, an incident of employment.[7]

---

**6.** In *Mack Trucks, Inc. v. Miller,* 23 Md.App. 271, 326 A.2d 186 (1974), *aff'd. mem.,* 275 Md. 192, 338 A.2d 71 (1975), an employee sustained an injury while playing touch football while on his employer's premises during a "coffee break." This Court said that the claimant's injury occurred during a rest time interval made available by the employer, on the employer's premises, and during an implicitly permitted, if not expressly encouraged, activity. *Miller* provides no guidance for us in the case *sub judice,* because Miller was injured while on the employer's premises, *see Miller,* 23 Md.App. at 275 n. 2., 326 A.2d at 188 n. 2. Turner was not.

**7.** For those cases holding that injuries arising from playing ball are, under the attendant circumstances, not compensable, *see Wilson v. General Motors Corp.,* 298 N.Y. 468, 84 N.E.2d 781 (1949); *Carpenter v. Town of New Castle,* 35 A.D.2d 16, 312 N.Y.S.2d 650 (1970), *aff'd mem.,* 29 N.Y.2d 760, 326 N.Y.S.2d 561, 276 N.E.2d 623 (1971); *Koperda v. H. Waterbury & Sons Co.,* 27 A.D.2d 968, 279 N.Y.S.2d 231 (1967) (mem.); *Iacovino v. National Biscuit Co.,* 18 A.D.2d 741, 235 N.Y.S.2d 511 (1962) (mem.).

Those to the contrary are: *Ezzy v. Worker's Compensation Brd.,* 146 Cal.App.3d 252, 194 Cal.Rptr. 90 (1983); *Tedesco v. General Electric Co.,* 305 N.Y. 544, 114 N.E.2d 33 (1953); *Devendorf v. County of Nassau,* 77 A.D.2d 706, 430 N.Y.S.2d 395 (1980) (mem.); *Maycheck v. Tibbets Water & Waste, Inc.,* 61 A.D.2d 862, 401 N.Y.S.2d 916 (1978) (mem.); *Burlingame v. Mobil Chemical Co.,* 61 A.D.2d 273, 402 N.Y. S.2d 70 (1978); *Zengotita v. New York Telephone Co.,* 58 A.D.2d 930, 396 N.Y.S.2d 921 (1977) (mem.); *Goldman v. Hazeltine Corp.,* 39 A.D.2d 621, 331 N.Y.S.2d 124 (1972) (mem.); *Paduano v. Rochester Telephone Corp.,* 37 A.D.2d 871, 325 N.Y.S.2d 97 (1971) (mem.); *Gore v. New York Air Brake Co.,* 33 A.D.2d 851, 305 N.Y.S.2d 814 (1969); *Esposito v. Western Electric Co.,* 30 A.D.2d 750, 291 N.Y.S.2d 378 (1968) (mem.); *Rafti v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 20 A.D.2d 592, 245 N.Y.S.2d 223 (1963) (mem.), *aff'd mem.,* 15 N.Y.2d 497, 254 N.Y.S.2d 109, 202 N.E.2d 556 (1964); *Sargent v. Tilo Roofing Co.,* 18 A.D.2d 1037, 238 N.Y.S.2d 645 (1963) (mem.); *Sorino v. Remington Rand, Inc.,* 1 A.D.2d 720, 147 N.Y.S.2d 34 (1955) (mem.);

The holdings of those cases have been summarized in 1A A. Larsen, *Workmen's Compensation Law,* § 22.00 (1982 ed. & Supp.1983):

"Recreational or social activities are within the course of employment when

(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."

*Sica* quotes with approval *Moore's Case,* 330 Mass. 1, 110 N.E.2d 764 (1953). There the Massachusetts Supreme Judicial Court articulated a five factor criteria for usage in determining whether an injury sustained in organized recreational activity arose out of or in the course of employment. The five factors of *Moore* are:

"(1) The customary nature of the activity, ...

(2) The employer's encouragement or subsidization of the activity, ...

(3) The extent to which the employer managed or directed the recreational enterprise,

\*      \*      \*      \*      \*      \*

(4) The presence of substantial pressure or actual compulsion upon the employee to attend and participate,
. . .

---

see also *Kemp's Case,* 386 Mass. 730, 437 N.E.2d 526 (1982) (compensation award to employee injured in softball game reversed and remanded to compensation commission with discretion to perform additional fact finding); *Clevenger v. Liberty Mutual Insurance Co.,* 396 S.W.2d 174 (Tex.Civ.App.1965) (denial of claim by employee injured at softball game reversed and remanded where trial court on appeal granted employer's motion for summary judgment).

(5) The fact that the employer expects or receives a benefit from the employee's participation in the activity, whether by way of improved employer-employee relationships ... through greater efficiency in the performance of the employee's duties ...."

330 Mass. at 4–5, 110 N.E.2d at 766–67.

Both *Sica* and *Moore* make perspicuous that with the possible exception of the existence of employer compulsion no one of the factors is decisive. *Id.* Each case must be decided on its own facts after evaluating their significance against the applicable individual factors.

During the trial before Judge Baylor, Turner produced evidence that he asserts demonstrates either: 1) that his employer "encouraged" the activities of the softball team; or 2) that his employer sought and received a benefit from the team's activities. That evidence may be summarized as follows: Memorandum "notices" were circulated throughout the offices of the public defender each spring "soliciting" players for the team; the notices were typed by a secretary in the office of the public defender; the notices were on the public defender's stationery, photocopied on a machine owned by the public defender; the notices were posted on bulletin boards in the public defender's offices; three trophies, including one won during the season in which Turner was injured, are kept on display in the office of Alan Murrell, Esq., the Public Defender for the State of Maryland; the players on Turner's team were drawn from several public defender's offices; the stated purpose of the team was to enhance office morale; and the captains of the various teams in the league meet for lunch several times a year in order to coordinate league activities.

Testimony produced on behalf of the employer showed that: the Office of the Public Defender never contributed any financial support to the team, or to the league; participation on the team was strictly voluntary; each player contributed his or her money to defray team expenses; the employer exercised no control over the activity; and team

activities were neither conducted on the employer's premises nor on the employer's time.

Our review of the record leads us to observe that no evidence was offered that the public defender sought or received any benefit other than that which we infer is ordinarily incidental to recreational activities; nor is there any evidence that persons in the public defender's office specifically solicited, encouraged or directed participation by Turner.

To reverse a judgment of a court in a non-jury trial we must be convinced that the judge's factual findings were clearly erroneous. Md.Rule 1086. We are unable to conclude that Judge Baylor's fact-finding was erroneous at all, much less clearly erroneous. He correctly and properly applied the law and properly called Turner out!

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.