555 A.2d 542

**GENERAL MOTORS CORPORATION**

v.

**Harry BARK.**

**No. 960, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

March 31, 1989.

Joseph F. Zauner, III (Birrane, Harlan & Sharretts, on the brief), Baltimore, for appellant.

Michael J. Lay (Motsay & Lay, on the brief), Baltimore, for appellee.

Argued before MOYLAN, GARRITY and BLOOM, JJ.

MOYLAN, Judge.
"Even fleas have little fleas,
   On their backs to bite 'em;
And those fleas have littler fleas,
   And so *ad infinitum*."

So it is even with judicial review. The Workers' Compensation Commission made an award of temporary total disability to the claimant/appellee, Harry T. Bark. Judge Robert I.H. Hammerman in the Circuit Court for Baltimore City looked over the shoulder of the Commission and reversed its award. A three-judge *in banc* panel of the circuit court then looked over Judge Hammerman's shoulder and reversed his decision. We now look over the shoulder of the three-judge *in banc* panel and reverse its decision. The Court of Appeals, of course, has it within its discretion to look over our shoulder and reverse us.

### *In Banc Review*

■ At every level reached on this escalator of judicial review, it is necessary to identify the appropriate standard of review. As we look down one stage to the decision of the *in banc* panel, identifying the standard is easy. The *in banc* panel was enjoined to examine the decision of Judge Hammerman exactly as we would be constrained to examine it, had the appeal been taken directly to us.

An appeal to an *in banc* panel is an alternative avenue of appellate review. The forum may be different, but the restraints upon the process are the same. Neither the *in banc* panel nor we may relevantly ask whether we would have reached the same decision as that reached by the circuit court. Neither it nor we have any independent or *de novo* fact-finding responsibility or prerogative. As to fact finding, we should both be concerned only with whether Judge Hammerman was legally in error. *Montgomery County v. McNeece*, 311 Md. 194, 198, 533 A.2d 671 (1987); *Washabaugh v. Washabaugh*, 285 Md. 393, 396–399, 404 A.2d 1027 (1979); *State Roads Commission v. Smith*, 224 Md. 537, 540, 168 A.2d 705 (1961). The *in banc* panel held that he was; we hold that he was not. That difference between the decision of the *in banc* panel and our own is the result of our different views as to the proper standard of review that Judge Hammerman should have employed, in the first instance, in handling the appeal from the Workers' Compensation Commission. Attention turns, therefore, to the appropriate scope and standard of review when an appeal is taken from the Commission to the circuit court. It is a subject not totally free of difficulty. An appeal of this type is an interesting, and in many ways very unusual, specimen to be examined.

*Review of Administrative Agency Decisions Generally*

■ Ordinarily, under the "judicial review" provisions of the Administrative Procedure Act, Maryland Code, State Government Article, § 10–215(g)(3)(v), the circuit court scrutinizes a decision of an administrative agency only for legal error. With respect to fact finding, the court may reverse or modify an agency's decision only if the "finding, conclusion, or decision of the agency ... is unsupported by competent, material, and substantial evidence in light of the entire record as submitted." Ordinarily, an appeal will be decided by the circuit court judge without a jury. Section 10–215(f). Ordinarily, no additional evidence will be introduced upon the merits. Section 10–215(e). Ordinarily, the

role of the reviewing trial court with respect to an agency's fact finding is austerely limited. As Chief Judge Hammond pointed out in *Insurance Commissioner v. National Bureau of Casualty Underwriters*, 248 Md. 292, 309–310, 236 A.2d 282 (1967):

"Whichever of the recognized tests the court uses—substantiality of the evidence on the record as a whole, clearly erroneous, fairly debatable or against the weight or preponderance of the evidence on the entire record—its appraisal or evaluation must be of the agency's fact-finding results and not an independent original estimate of or decision on the evidence. The required process is difficult to precisely articulate but it is plain that it requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions under any of the tests, all of which are similar. There are differences but they are slight and under any of the standards the judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. This need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment."

Judge Powers well summarized the deference that ordinarily will be shown by the reviewing court to the fact finding of the agency in *Commissioner, Baltimore City Police Department v. Cason*, 34 Md.App. 487, 508, 368 A.2d 1067 (1977):

"A reviewing court may, and should, examine any inference, drawn by an agency, of the existence of a fact not shown by direct proof, to see if that inference reasonably follows from other facts which are shown by direct proof. If it does, even though the agency might reasonably have drawn a different inference, the court has no power to disagree with the fact so inferred.

A reviewing court may, and should, examine any conclusion reached by an agency, to see whether reasoning minds could reasonably reach that conclusion from facts in the record before the agency, by direct proof, or by

permissible inference. If the conclusion could be so reached, then it is based upon substantial evidence, and the court has no power to reject that conclusion.

A reviewing court may, and should, examine facts found by an agency, to see if there was evidence to support each fact found. If there was evidence of the fact in the record before the agency, no matter how conflicting, or how questionable the credibility of the source of the evidence, the court has no power to substitute its assessment of credibility for that made by the agency, and by doing so, reject the fact."

### De Novo Review in Workers' Compensation Cases

By way of dramatic contrast, an appeal to the circuit court from a decision of the Workers' Compensation Commission is totally different. The Workmen's Compensation Act, now codified as Maryland Code, Article 101, was first made part of the statutory law of Maryland by Chapter 800 of the Acts of 1914. Section 55 of the initial act, authorizing review in the circuit court of "any decision of the Commission" by "a proceeding in the nature of an appeal," was in its essential features indistinguishable from the present Section 56, governing "Appeals." In pertinent part, Section 56 provides:

"Any employer, employee, beneficiary or person feeling aggrieved by any decision of the Commission affecting his interests under this article, may have the same reviewed by a proceeding *in the nature of an appeal* and initiated in the circuit court." (Emphasis supplied).

Upon such review, the responsibility of the circuit court is, in effect, twofold. Section 56 provides initially:

"[T]he court shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the article, and whether it has misconstrued the law and facts applicable in the case decided."

Thus far, the review contemplated seems to comprehend a review upon the record (or upon "[s]tipulations" or "a

statement in lieu of a record") of the proceedings before the Commission. As such, it would not differ from the ordinary appeal from an administrative agency. The circuit court, in routinely appellate fashion, would scrutinize the action of the Commission for legal error, including the question of evidentiary insufficiency.

Then, by way of significant departure from the administrative agency norm, Section 56 (just as did the original Section 55) goes on to provide a vastly broader recourse for the appellant in a Workers' Compensation case:

> "Upon the hearing of such an appeal the court shall, upon motion of either party filed with the clerk of the court according to the practice in civil cases, submit to a jury any question of fact involved in such case."

There is thus provided, in major measure, the prerogative of a trial *de novo* at the circuit court level of any or all of the factual issues initially determined by the Commission.

It is worthy of note that what is now so venerable an institution as the trial *de novo* in Workers' Compensation cases was never explicitly referred to in those terms by the statute that created it. "Although the statute does not use the term, those directions would seem to contemplate a trial which essentially is *de novo*." *Richardson v. Home Mutual*, 235 Md. 252, 255, 201 A.2d 340 (1964). With 75 years of extensive case law behind it, however, the plenary availability of trial *de novo* at the circuit court level is not to be doubted, even if its statutory pedigree is more implicit than explicit. *Schiller v. B. & O. R.R. Co.*, 137 Md. 235, 112 A. 272 (1920); *Maryland Bureau of Mines v. Powers*, 258 Md. 379, 265 A.2d 860 (1970); *Turner v. State, Public Defender*, 61 Md.App. 393, 486 A.2d 804 (1985).

### An Apparent Inconsistency: Freedom From Error vs. De Novo Fact Finding

There remains, however, a nagging problem of reconciling *de novo* fact finding, as that phenomenon is now understood, with the seemingly inconsistent provision of Section 56 that immediately precedes it:

"If the court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed."

There would seem to be a dilemma created if the Commission, within its fact-finding prerogative, legitimately found facts pointing in one direction but the *de novo* or supervening fact finder, with equal legitimacy, found facts pointing in the opposite direction. What would happen if the circuit court concluded that the decision of the Commission was in every respect free from error (arguably requiring its affirmance) but the circuit court, in the course of its *de novo* fact finding, nonetheless reached a different conclusion? Does a different *de novo* result necessarily imply error on the part of the Commission? Hardly. If the *de novo* court found a particular witness highly creditable, that would not establish that the Commission had been in error or had "misconstrued the facts" in finding that same witness less creditable. If the *de novo* court gave a particular bit of testimony or other evidence great weight, that would not establish that the Commission had been in error or had "misconstrued the facts" in giving it less weight. Regrettably, the case law has not yet even addressed, let alone attempted to reconcile, these apparently contradictory directions in Section 56(a).

There are two possible ways out of the dilemma. The first is suggested by R.P. Gilbert and R.L. Humphreys, *Maryland Workers' Compensation Handbook* (1988), 312–314. That authority recognizes the fundamentally different natures of the two appeal modalities provided:

"The practice is that appeals are presented to trial courts in one of two fashions: (1) the submission of the case to the judge on the basis of the record made before the Commission; or (2) a *de novo* evidentiary hearing before the court sitting with or without a jury." (Footnote omitted).

Under that dichotomy, it is the first of these appeal modes that requires the circuit judge to determine under Section 56:

1) "whether the Commission has justly considered all of the facts concerning the injury,"

2) "whether it has exceeded the powers granted it by the article," and

3) "whether it has misconstrued the law and the facts applicable in the case decided"

and then directs him to affirm "the decision of the Commission" if he determines "that the Commission has acted within its powers and has correctly construed the law and facts." Thus far, there is nothing of a *de novo* nature involved. Thus far, a review by the circuit court of the record before the Commission would suffice. The statutory direction to affirm an error-free Commission decision would not apply, however, to the alternative appeal mode of *de novo* trial. Indeed, once the circuit court embarks upon its *de novo* fact-finding mission, it is totally unconcerned with whether the Commission "correctly construed the law and facts" or not.

Another possible reconciliation of the apparently inconsistent provisions may lie in the semantic probability that the statutory language of 1914, still unchanged, reflects a time when our understanding of the range of legitimate fact finding had not reached its present level of sophistication. There appears to have been an intellectual arrogance or conceit on the part of earlier reviewing authorities that if they, by way of supervening or *de novo* fact finding, came to a different conclusion than that reached by the initial fact finder, that necessarily implied that the initial fact finder had *ipso facto* been wrong or had thereby "misconstrued the facts."

If that be the case, it is an unfortunate conceit. Since both the initial fact finder and the supervening fact finder enjoy the same prerogative independently to assess credibility and independently to weigh evidence, they may with equal validity reach different conclusions even upon the

same record. *A fortiori,* they may do so when the witnesses testify afresh at the trial *de novo,* quite possibly with differences the second time around both in the substance of their testimony and in their demeanors as they testify. Because, moreover, additional evidence may be presented at the trial *de novo* that had not been before the Commission, the additional evidence may compel a *de novo* finding that could not reasonably have been reached by the Commission without the benefit of such evidence. Under such circumstances, the Commission clearly could not be held to have "misconstrued the facts" before it. The flaw is in the misperception that every problem has a single correct solution.

In *Danz v. Schafer,* 47 Md.App. 51, 422 A.2d 1 (1980), we examined the nature of supervening or *de novo* fact finding and repudiated the arrogant notion that someone else's fact finding contrary to our own is necessarily erroneous. It is a conceit on the part of a reviewing institution which is not only condescending but totally unnecessary to the result. In dealing, purely hypothetically, with a standard of review that might be (but ultimately was not) employed by an appellate court where it had the same agreed statement of facts before it as was before the trial court, we observed, at 47 Md.App. at 59, 422 A.2d 1:

"This Court has considered such an interesting, albeit unusual, possibility. We have put our heads together as fact finders and agreed that if we were looking *de novo* at the undisputed but ambiguous factual predicate here, we would give greater significance than did Judge DeWaters to the events that occurred after September 30, 1974. On the basis largely of that hindsight, we would infer that the original intent of Mrs. Winters had been to make a loan. *Let it be unmistakably clear, however, that this does not remotely suggest that we think Judge DeWaters was wrong,* let alone clearly wrong. *It is no more the case that he is wrong and we are right than that we are wrong and he is right. The very nature of the fact-finding process is such that there is a range for*

*divergent but equally legitimate conclusions, none of which [is] wrong.* We cannot say, as a matter of law, that our finding of an intention to make a loan is compelled by clear and decisive evidence that permits no other conclusion. We simply aver that *in a close case that could reasonably tilt either way, our personal and idiosyncratic tilt is in one direction. We would defend vigorously, however, the legitimate prerogative of others reasonably to tilt in a different direction.* If we are at liberty, therefore, to undertake *de novo* fact finding, we should reverse." (Footnote omitted) (Emphasis added).

### De Novo Trial May Be Before Judge or Jury

With or without such reconciliation, however, the broad right of trial *de novo* is indisputably available and was timely invoked by the appellee here, the General Motors Corporation. Upon such trial *de novo*, it is now well settled that factual issues may be submitted to a judge, sitting without a jury, as readily as to a jury. This is so notwithstanding the fact that Section 56 itself speaks only of "submit[ting] to a jury any question of fact involved in such case." Chief Judge Brune dealt with a judge as the *de novo* fact finder in *L. & S. Construction Co. v. State Accident Fund,* 221 Md. 51, 60, 155 A.2d 653 (1959), overruled on other grounds by *Whitehead v. Safeway Steel Products, Inc.,* 304 Md. 67, 497 A.2d 803 (1985):

"The instant case was tried before the court without a jury, but disputed questions of fact which would have been for the determination of the jury are to be determined by the judge as questions of fact, not as questions of law....

Though there is no dispute as to the basic facts here, there is a dispute as to the ultimate and decisive inferences to be drawn therefrom." (Citations omitted) (Footnote omitted).

*And see Abell v. Goetze, Inc.,* 245 Md. 433, 226 A.2d 253 (1967); *Egypt Farms, Inc. v. Lepley,* 49 Md.App. 171, 430

A.2d 122 (1981); *Turner v. State, Public Defender*, 61 Md.App. 393, 486 A.2d 804 (1985). The trial *de novo* in this case was before Judge Hammerman, sitting without a jury.

## What Is An "Essential" Trial De Novo?

■ The appeal from the Commission to the circuit court is not in the purest sense a trial *de novo*. "We have held this section [Section 56] provides for a trial which is *essentially* de novo." (Emphasis supplied). *Maryland Bureau of Mines v. Powers*, 258 Md. 379, 382, 265 A.2d 860 (1970); *Smith v. State Roads Comm.*, 240 Md. 525, 533, 214 A.2d 792, 796 (1965); *Richardson v. Home Mutual*, 235 Md. 252, 255, 201 A.2d 340 (1964). The inquiring mind will immediately demand to know the significance of the qualifier "essentially." What is the difference between an essential trial *de novo* and a true trial *de novo*? Realistically, not much.

■ A true trial *de novo*, of course, puts all parties back at "square one" to begin again just as if the adjudication appealed from had never occurred. Whichever party (in these cases, the claimant) had the burden of production and the burden of persuasion before the Commission would again have those same burdens before the circuit court. In an essential trial *de novo*, on the other hand, that would not necessarily be the case. The qualification stems from the provision in Section 56(c):

"In all court proceedings under or pursuant to this article, the decision of the Commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same."

If the claimant loses before the Commission and then appeals to the circuit court, the provision, as a practical matter, is largely meaningless. The claimant has the burden of producing a *prima facie* case before the trial court, lest he suffer a directed verdict against him, just as he, as the original proponent, had that same burden before the Commission. The only difference is that the record made before the Commission will normally satisfy the claim-

ant/appellant's burden of production at the circuit court level. The claimant has, moreover, the same burden to persuade the trial court by a preponderance of the evidence that his claim is just as he had to persuade the Commission in the first instance.

The qualifying language only takes on significance when it is the claimant who has prevailed before the Commission and the defendant/insurer who appeals to the circuit court. It is then that the allocation of burdens switches. In such a case, the decision of the Commission is, *ipso facto*, the claimant's *prima facie* case and the claimant runs no risk of suffering a directed verdict from the insufficiency of his evidence before the circuit court. Indeed, the successful claimant, as the non-moving party on appeal, has no burden of production. The qualifying language also gives the successful claimant below the edge—the tie-breaker—if the mind of the fact finder (judge or jury) is in a state of even balance. The tie goes to the winner below. *Blake Construction Co. v. Wells*, 245 Md. 282, 286, 225 A.2d 857 (1967); *Dent v. Cahill*, 18 Md.App. 117, 123–124, 305 A.2d 233, 237 (1973). Except for the relatively rare occasions when the procedural nuances will make a difference, however, there is not much distinction between a true trial *de novo* and an essential trial *de novo*.

In this case, the claimant prevailed before the Commission. He was found to have been temporarily totally disabled from March 15, 1985, through May 5, 1985, inclusive. Judge Hammerman gave that decision of the Commission the benefit of being *prima facie* correct and appropriately cast the burden of attacking it upon General Motors. As was his fact-finding prerogative, however, he nonetheless found in favor of General Motors:

"I am well aware of the presumption of correctness.... I ... do apply the presumption of correctness but I recognize that all it really does is put the burden on the employer and self-insurer in this case to prove by a preponderance of the evidence the claim that they are

asserting and I think they have done so and clearly done so."

### No Burden of Producing Additional Evidence

In attacking the decision of the Commission and in seeking to overcome its *prima facie* correctness, General Motors relied primarily on the record made before the Commission. It called one live witness, the claimant himself, whose testimony largely tracked his testimony before the Commission. Even in looking at essentially indistinguishable testimony, however, the Commission, as was its prerogative, gave great credit to the claimant's testimony, whereas Judge Hammerman, as was his prerogative, gave it little or no credit. Relying upon the Commission record alone, relying upon that record as supplemented by live testimony, or relying entirely upon new evidence are all equally legitimate ways of proceeding upon appeal at the circuit court level. Judge Finan discussed the evidentiary options in *Abell v. Goetze, Inc.*, 245 Md. 433, 437–438, 226 A.2d 253 (1967):

"The burden is upon the appellant to overcome the presumption that the decision of the Commission is *prima facie* correct, and he must do this to the satisfaction of the trier of facts.... This can be done by submitting new evidence, by relying on all or a part of the record before the Commission, by argument as to the probative value of the evidence and by argument as to the credibility of witnesses. All of these matters are legitimate elements of a trial *de novo* which counsel may exercise to the fullest legitimate means to overcome the existing presumption." (Citation omitted).

Although the main burden cast upon a party appealing from the Commission to the circuit court is one of persuasion, there is also, in a literal sense, a technical burden of production as well. That burden of production, however, can easily be satisfied simply by offering to the trial court the record from the Commission. From the identical record, the *de novo* or supervening fact finder may draw

legitimate inferences different from the equally legitimate inferences drawn by the initial fact finder. The same evidence can support different results. No additional evidence, therefore, is required to support the change in result. Judge Delaplaine analyzed this very possibility in *Williams Construction Co. v. Bohlen*, 189 Md. 576, 580, 56 A.2d 694, 696 (1948):

> "It was urged here that the evidence in the trial Court was substantially the same as the evidence before the Commission, and that claimant failed to meet the burden cast upon him by law to prove that the decision of the Commission was incorrect. The Maryland Workmen's Compensation Act provides that in all Court proceedings under or pursuant to this Act, the decision of the Commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same.... We hold, however, that where the Commission has considered conflicting evidence of essential facts, and has drawn one of two different permissible inferences, *there may be imposed upon the party attacking the decision of the Commission merely a burden of persuasion, and not necessarily a burden of additional proof.* He may rely upon identically the same evidence that was presented before the Commission. The provision of the Act placing the burden of proof upon the appellant means only that he must prove in the trial Court what he asserts." (Citation omitted). (Emphasis supplied).

The absence of a burden to produce *additional* evidence does not imply, of course, the absence of even the minimal burden to produce some evidence.

### Both the Commission and Judge Hammerman Were Free From Error

Just such disputed evidence was before both the Commission and Judge Hammerman. The legitimate inference could have been drawn that the claimant was fully entitled to the benefits awarded him by the Commission. The Commission reasonably did so. The diametric inference

could also have been drawn that the claimant was a malingerer for a substantial portion of the benefit period. What Judge Hammerman did in drawing that latter inference was what was described in *Egypt Farms, Inc. v. Lepley,* 49 Md.App. 171, 176, 430 A.2d 122 (1981):

"The court (or jury), in other words, is not so bound by the Commission's fact findings as is normally the case in administrative appeals, but is free to weigh the evidence (and the inferences from it) and reach entirely opposite conclusions."

Free to reach an entirely opposite conclusion, he reached an entirely opposite conclusion.

The record before the Commission, as summarized by the *in banc* panel, established the following first-level facts which are not in dispute:

"On March 11, 1985 while working for Employer as a salvage mechanic, Claimant drove an electric salvage cart through the plant picking up scrap metal. A fork lift collided with Claimant's cart causing an injury to his knee. He was taken by ambulance to the plant hospital, where his knee was examined, cleansed, x-rayed and bandaged.

Assigned to light duty, Claimant worked another hour and a half on March 11, 1985 and full time on March 12th, 13th, and 14th, 1985. On March 15th, 1985, Claimant was examined by Employer's doctor, Dr. Mohammed H. Zamani and by his own doctor, Dr. Magdi H.G. Henein. On that day, Employer's doctor advised Claimant 'to resume work without kneeling, squatting and limited walking.'

Claimant's doctor recorded the following disposition, *inter alia:*

'He was advised a course of physical therapy consisting of moist heat, therapeutic exercises and ultra sound. He will stay off work for next week. He was given a prescription for Motrin....'

On March 22, 1985 Claimant again saw both doctors. Employer's doctor found:

'... no deformity, no swelling, no tenderness. Range of motion of the knee was full.... The patient was advised to resume all regular activities....'

On the other hand, the examination of Claimant's doctor revealed:

'tenderness with swelling. Range of motion was restricted by pain.... Patient will continue for another week. He will stay off work. He will see me again in one week's time.'

Following an April 1st visit with the doctor, Claimant returned to work on April 2nd, 3rd, and 4th. Thereafter he did not return to work until April 22nd when he was given regular duty as an inspector on the assembly line. In response to his request on April 23rd, Claimant's doctor gave him a slip authorizing light duty which he performed that evening. Claimant next returned to work on May 6th, 1985."

There was some difference, of course, in the prescriptions of the two doctors. The claimant's doctor would have had the claimant stay off work on a week-to-week basis, whereas the employer's doctor advised him "to resume all regular activities."

The big difference between the Commission's attitude and Judge Hammerman's attitude, however, related to the testimony of the claimant himself. The claimant was a witness at the *de novo* trial and Judge Hammerman had, therefore, the opportunity to observe his demeanor, to assess his credibility, and to weigh certain explanations given by him. The claimant explained that he had been unable to return to his duty on the night shift because that would have conflicted with his scheduled evening appointments for physical therapy. The Commission took that explanation at face value, whereas Judge Hammerman was more skeptical as to why he did not pursue the possibility of a different therapist or a different therapy schedule. Judge Hammerman, unlike the Commission, was also highly skeptical about the claimant's returning to work during one three-day

period, qualifying him for holiday pay at Easter, and then resuming his more leisured recuperation at home.

Applying the clearly erroneous standard to Judge Hammerman's fact finding, there was sufficient evidence before him, along with the reasonable inferences that could be drawn therefrom, to support his finding in favor of General Motors. Under the appropriate standard of review, Judge Hammerman's *de novo* fact finding was, therefore, free from error.

This does not remotely suggest that the Commission's finding was not also free from error. The Commission "justly considered all of the facts concerning the injury." The Commission did not exceed "the powers granted it by the Article." The Commission did not misconstrue "the law and the facts applicable in the case decided." If, therefore, Judge Hammerman or the *in banc* panel or this Court were being called upon to assess the propriety of what the Commission did, the Commission's decision would unquestionably be affirmed. The Commission's decision is not being affirmed, however, not because that is the wrong answer but because that is the wrong question.

Because of the very nature of *de novo* fact finding, we are not assessing, and the *in banc* panel should not have assessed, the propriety of the Commission's decision. What matters rather is the propriety of Judge Hammerman's decision.

### The Right Answer to the Wrong Question

■ The *in banc* panel erroneously applied the wrong standard to its review of Judge Hammerman's decision. It concluded that he should have ruled upon the propriety of the decision of the Commission as a matter of law rather than render a new decision as a matter of fact. The *in banc* panel focused upon the legal sufficiency of the Commission's initial decision rather than upon the legal sufficiency of Judge Hammerman's *de novo* decision. Repeatedly in the course of its opinion, it sounded that theme:

"The Commission could have found it reasonable, therefore, that Claimant followed *all* of his doctor's recommendations, not just physical therapy, moist heat, exercises, ultra sound, but also staying off work for the next week." (Emphasis in original).

That observation is absolutely accurate. It is also quite beside the point. The panel's opinion went on:

"The Commission, however, may well have determined that Claimant's attendance at his doctor's facility was both reasonable and justifiable."

Once again, the observation is accurate. Once again, it is beside the point. On yet another occasion, the opinion of the panel observed:

"The report of April 9th, 1985 well supports an inference by the Commission that Claimant, though not a perfect historian, gave truthful testimony based on his memory of the incident."

Yet again, the observation is accurate. Yet again, it is beside the point.

The final holding of the panel left no doubt as to the basis for its decision:

"Based upon a careful review reading of the facts and evidence before the Commission, ... the *in banc* review panel is unanimous in finding that the Commission justly considered all the facts concerning the injury, that the Commission did not exceed its statutory authority and that the Commission did not misconstrue the facts or the law applicable to this case. *Montgomery Ward v. Bell, supra* [46 Md.App. 37, 415 A.2d 636 (1980)]. The decision of the Commission should have been affirmed. For that cause, we respectfully reverse and remand."

The answer that the Commission was impeccably correct both in its decision and in the process by which it arrived at its decision is beyond dispute. In this case, however, it is the right answer to the wrong question. The *in banc* panel ignored the critical difference between an ordinary appeal from an administrative agency and a trial *de novo*.

In arriving at its conclusion, the *in banc* panel articulated the legal standard that it was applying:

"Where the findings of the Commission are supported by inferences fairly drawn from the evidence, and even though the evidence might be susceptible of opposing inferences, the Court should not reject those findings."

The inappropriateness of applying such a standard to the review of a trial *de novo* was pointed out by Judge Finan in *Abell v. Goetze, Inc.*, 245 Md. 433, 437, 226 A.2d 253 (1967):

"[T]he inference that so long as there is sufficient evidence to support the Commission's findings that it cannot be reversed is not to be drawn; otherwise there would be little meaning to the law that upon appeal Workmen's Compensation cases are to be tried *de novo.*"

In fairness to the *in banc* panel, it is easy to understand where it went astray. From the beginning of our Workers' Compensation law in 1914, the concern of the law was with accidental injuries. Appeals to the circuit court from Commission decisions involving accidental injuries have always been handled in the fashion we have been describing in the course of this opinion. A confusing complication entered the law in 1939, however, when the subject matter of workers' compensation was expanded to include for the first time occupational diseases.

From the first appearance of occupational disease cases in 1939 through June 1, 1983, appeals to the circuit court in those cases were handled in a different way than were appeals in accidental injury cases. During that time period, Section 56 provided "that in all appeals in which occupational diseases are involved, the findings of fact by the Commission shall be final and not subject to review or modification by the court or be submitted to a jury." The same prohibition on a *de novo* determination of the facts by the circuit court was reiterated by Section 29 of Article 101. In occupational disease cases, therefore, the appeal from the Commission was the same austere appeal upon the record that is provided for appeals from administrative agencies generally. The right to *de novo* fact finding, traditional in

accidental injury cases, was simply not available for occupational disease cases.

Chapter 521 of the Acts of 1982, however, abolished that distinction between the handling of occupational disease cases and the handling of accidental injury cases. The provisions of Section 56(a) which declared that "the findings of the Commission in occupational disease cases are final and may not be submitted to a jury" was amended by the addition of the limiting words "until June 1, 1983." As Judge Robert Bell stated in *Glidden–Durkee (SCM) Corp. v. Mobay Chemical Corp.*, 61 Md.App. 583, 597, 487 A.2d 1196 (1985), "We hold that different standards of review in occupational disease cases and accidental injury cases are no longer viable." *See also Montgomery Ward & Co. v. Bell*, 46 Md.App. 37, 415 A.2d 636 (1980).

The present case, of course, involves an accidental injury. The standard employed by the *in banc* panel has never applied to accidental injury cases. Indeed, it has not applied even to occupational disease cases since 1983. The case law cited by the *in banc* panel as authority for the standard of review it used is, therefore, not only a stroll down memory lane but a stroll down the wrong memory lane: *Martin–Marietta v. Leius*, 237 Md. 217, 205 A.2d 792 (1965); *Maryland Bureau of Mines v. Powers*, 258 Md. 379, 265 A.2d 860 (1970); *Zentz v. Peters & Taylor, Inc.*, 11 Md.App. 1, 272 A.2d 430 (1971). They are all occupational disease cases and they were, moreover, all decided before the 1982 amendment abolished the standard they proclaim even for those cases. Ideally, these juridicial relics should be purged from the annotations, if not the law reports, because they only serve as a snare for the unwary.

The correct governing standard was articulated by Chief Judge Gilbert in *Turner v. State, Public Defender*, 61 Md.App. 393, 398, 486 A.2d 804 (1985):

"We made clear in *Dent* that the fact finder 'may disagree with the Commission's interpretation of the facts and arrive at a different conclusion. . . .' 18 Md.App. at 127, 305 A.2d at 239. Unlike many other administrative

law bodies, such as the Public Service Commission, the Insurance Commission, and zoning boards, where the appeal to circuit court is usually determined on the basis of the record made at the hearing before the agency, workmen's compensation appeals are heard *de novo.*"

The appellee complains that Judge Hammerman substituted his judgment for that of the Commission. Of course he did. That is exactly what a *de novo* fact finder is supposed to do. With respect to a similar charge against a *de novo* fact finder in *Turner v. State, Public Defender, supra,* Judge Gilbert observed, at 61 Md.App. at 397, 486 A.2d 804:

"Turner asserts that, '[t]he trial judge committed reversible error in substituting [his] judgment for that of the Workmen's Compensation Commission.' Turner is flat out wrong.",

and went on to conclude, at 61 Md.App. at 401, 486 A.2d 804:

"Thus, we conclude that Judge Baylor was safe in substituting his ruling on the facts for that of the Commission."

JUDGMENT OF IN BANC REVIEW PANEL REVERSED; COSTS TO BE PAID BY APPELLEE.