*Montgomery County v. Maloney*, No. 632, September Term 2018
Opinion by Kehoe, J.

**WORKERS' COMPENSATION – REVIEW BY COURT – TRIAL *DE NOVO***

When a party seeks judicial review of an unfavorable decision by the Workers' Compensation Commission, his opponent is not inescapably bound by the appealing party's procedural preference. The language of Md. Code, Lab. & Empl. § 9-745(d), makes plain that "any party" can request, "in accordance with the practice in civil cases," a *de novo* review of "any question of fact involved in the case."

Review by "essentially" *de novo* trial is available only for issues of fact actually decided by the Commission. Whether an injury arises "out of" and "in the course of" employment is a factual question—or a "mixed" question of law and fact—able to be considered afresh by the circuit court if there are facts in dispute or if opposing inferences can reasonably be drawn from undisputed facts.

**WORKERS' COMPENSATION – SCOPE AND EXTENT OF APPELLATE REVIEW**

When the circuit court concludes after an "essentially" *de novo* trial that an injury arose out of or in the course of employment, we review that conclusion only for clear error. So long as there is competent or material evidence in the record to support the court's conclusions, we will affirm.

**WORKERS' COMPENSATION – COMPENSABLE INJURIES – ARISING "OUT OF" EMPLOYMENT**

Determining whether an injury arises "out of" employment is a question of causation. To determine whether the requisite causal link exists, we apply the positional-risk test. This test poses a simple but-for question: But for his employment, would the employee have been where he was when he was injured?

**WORKERS' COMPENSATION – COMPENSABLE INJURIES – ARISING "IN THE COURSE OF" EMPLOYMENT**

While the requirement that injuries arise "out of" employment focuses on the existence of a connection between the injury and the injured worker's employment, the requirement that injuries arise "in the course" of employment is concerned with the strength of that

connection. To be compensable, accidental injuries must be sufficiently work-related. They should arise within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment. Even if an injury is sustained off premises and off the clock, the surrounding circumstances may evince an independently convincing association between the injury-causing activity and employment sufficient to make the injury compensable.

Circuit Court for Montgomery County
Case No. 426517V

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 632

September Term, 2018

———————————————————

MONTGOMERY COUNTY, MARYLAND

v.

JOHN T. MALONEY

———————————————————

Kehoe,
Leahy,
Adkins, Sally D.,
(Senior Judge, Specially Assigned)
JJ.

———————————————————

Opinion by Kehoe, J.

———————————————————

Filed: April 7, 2020

*Gould, Steven, B., J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In this appeal from a judicial-review action, Montgomery County asks us to reverse a judgment of the Circuit Court for Montgomery County, the Honorable Jeannie E. Cho, presiding, which affirmed a decision of the Workers' Compensation Commission in favor of Montgomery County firefighter John T. Maloney. The County presents two issues, which we have reworded and reordered for purposes of analysis:

1. Did the trial court err in converting the County's on-the-record appeal to an essential trial *de novo* at Maloney's request?

2. Did the trial court err in finding that Maloney's injury arose "out of" and "in the course of" his employment?

As we explain below, the circuit court did not err on either front. We will therefore affirm its judgment.

## Background

In accordance with familiar principles of appellate review, we will state the facts in the light most favorable to Maloney, the prevailing party at trial. *See* Md. Rule 8-131.

Maloney is a career firefighter for Montgomery County, Maryland. At the time of trial, Maloney, a resident of Sterling, Virginia, was assigned to work at Fire Station 23 in Rockville. Maloney's typical work schedule required him to work twenty-four-hour shifts, starting and ending at 7 a.m. After each twenty-four-hour shift, he would have forty-eight hours off.

At the end of April 2016, the County hosted a two-day recruiting event at the Montgomery County Public Safety Training Academy, which is located near Gaithersburg, Maryland. The event was scheduled for Friday, April 29, and Saturday, April 30. Maloney

was an instructor in the County's Candidate Physical Ability Test (CPAT) program for the recruitment of new firefighters and Battalion Chief Anthony Coleman was Maloney's supervisor in that regard. Coleman asked Maloney to volunteer to explain the CPAT to potential recruits at the event. Maloney agreed. Maloney would be paid overtime to work the event, which ran from 8 a.m. to 8:30 p.m. on Friday and from 6 a.m. to around 4 p.m. on Saturday.

That Friday, at the end of the first day of the recruitment event, Maloney left the academy at around 8:30 p.m. He went to a grocery store to pick up some food, and then, instead of driving home to Sterling, Virginia, Maloney went to nearby Fire Station 33, in Potomac, Maryland, to sleep for the night. Station 33 was not Maloney's regularly assigned station, and it was not the closest station to the academy. But, according to Maloney, it was "a slower station" where he could get some rest. And staying over at fire stations before or between shifts, Maloney testified to the circuit court, was "a normal customary practice" for County firefighters.

When he arrived at Station 33 at around 9 p.m., Maloney spoke with Captain Daniel Hudson, the station's commander. Hudson knew Maloney was staying overnight at the firehouse because he was supposed to work the recruitment event the following morning at the nearby academy. Maloney did not recall expressly asking the commander about staying at Station 33 that night, but no one told Maloney that he should not or could not do it.

Later that same night, Maloney cleaned up, took a shower, and did some reading. At around 10:30 p.m., Maloney walked into the engine bay. The lights were out, and when Maloney stepped down into the bay, he rolled his ankle. In accordance with procedure, Maloney later woke up Hudson to report his injury. Hudson filled out and filed a First Report of Injury, as required when an employee injures himself at work.

On September 30, 2016, the Workers' Compensation Commission held a hearing to determine whether Maloney's April 29 accidental injury was compensable under the Workers' Compensation Act. Maloney and Captain Michael Glazier, supervisor of the County's Fire and Rescue Operational Medical Services program, testified at the hearing. Maloney's testimony focused mainly on the facts outlined above. He also explained to the Commission that it was "generally permissible" for a County firefighter to shower and sleep at any of the County's fire stations, regardless of the station to which the firefighter is assigned. Maloney also told the Commission that over the course of the ten years in which he had occasionally slept at other stations, he had never needed special permission to do so. Captain Glazier's testimony was brief but aligned with Maloney's testimony. He told the Commission that there was no prohibition on firefighters sleeping at stations between shifts; that they were not required to get specific permission to do so; and that the practice was "routine"—and even "encouraged" when something might otherwise cause firefighters to arrive late for work.

By order dated October 4, 2016, the Commission found that Maloney's accidental injury arose out of and in the course of his employment with the County. The Commission

ordered the County to pay all causally related medical expenses in accordance with the Commission's Medical Fee Guide.

On November 2, 2016, the County petitioned the Circuit Court for Montgomery County for on-the-record judicial review of the Commission's award. Maloney filed a response to this petition and requested a "*de novo* judicial review by jury trial," pursuant to Md. Code, § 9-745(d) of the Labor and Employment Article ("Lab. & Empl."). The County moved to strike Maloney's request, but the circuit court denied this motion, as well as the County's subsequent motion to reconsider the order denying the motion to strike that request. Both parties filed motions for summary judgment and oppositions to their respective motions. The circuit court denied the motions.

On April 12, 2018, the trial requested by Maloney commenced before the circuit court. Maloney was the first witness to testify. His testimony focused on the facts and circumstances surrounding his injury, and he more or less repeated what he had said at the Commission's hearing. Maloney was clear that he was staying at Station 33 on the night of his injury for his convenience. "It's a slower station," he said, "and I didn't want to go to a station that was going to keep me up all night."

Battalion Chief Anthony Coleman, one of the County's witnesses, testified before the circuit court about the practice of off-duty firefighters staying overnight at different fire stations. Coleman explained that there was no written policy for making beds available to off-duty firefighters, but that he was familiar with the practice from his days as a station officer. "I used to sleep at stations also," he said. Coleman explained that the practice was

"permitted" but that it was not necessarily "encouraged" by the County, except in the case of inclement weather or some other "extreme" circumstances, "twice a year maybe."

Coleman explained that off-duty firefighters who wish to sleep at a station are supposed to speak with the officer in charge and make sure that there was space available. Firefighters do not need any kind of advance written or oral permission, but the officers in charge need to know who is in the station at all times, he said. Sometimes firefighters will call in advance to reserve a bed, but, regardless, firefighters are very rarely turned away. "The majority of the time, everybody's allowed to stay except for very extreme circumstances," Coleman said. "If there's no space, then people sleep on couches. . . . [I]t's a frat house, so we'll find a way for them to stay."

Coleman also told the court that off-duty officers staying at stations are not allowed to respond to emergency calls, and that Maloney would have had to remain in the station had such a call come in the night he was injured.

Captain Daniel Hudson, the officer in charge at Station 33 on the night Maloney was injured, testified that he knew Maloney was staying at the station that night. Like Coleman, Hudson told the court that having off-duty firefighters stay at the station before a shift was not unusual.

The circuit court also heard testimony from Jeffrey Buddle, president of the local firefighters union. He provided additional context about the County's practice of allowing off-duty firefighters to sleep at stations before and between shifts (emphasis added):

[Buddle:]   [F]rom my experience, it's common that firefighters do stay at fire stations during the overnight hours even when they're not on duty.

I can give a few examples of when that might occur. Certainly if there's an impending inclement weather such as a snow storm, particularly if they're calling for that snow fall to start in the overnight hours, a lot of firefighters will come in the night before.

*We also have firefighters that work for Montgomery County, they live just about everywhere, you name it.* In a surrounding state, they live there, and I mean, New Jersey, Pennsylvania, Delaware, Virginia, West Virginia.

*A lot of times when a fire fighter is out here on whether it be overtime or a training class or whatever and then has to be somewhere in another work assignment the next morning, it is very common for our firefighters to stay at a fire station here in Montgomery County versus the long travel periods of time late at night.*

Based on its review of this testimony, considered in light of the initial decision of the Commission, the circuit court ultimately concluded that Maloney's injury arose out of and in the course of his employment. (We will discuss the court's analysis in more detail later in this opinion.) The circuit court affirmed the Commission's decision to award Maloney workers'-compensation benefits. The County filed a timely appeal.

**Analysis**

A. The motion for an "essentially" *de novo* trial

The County's first appellate contention is that the circuit court erred in granting Maloney's request for a trial under Lab. & Empl. § 9-745(d), converting the County's on-the-record administrative appeal into a *de novo* appraisal of the facts. The County presents two arguments in support of this contention. First, the County argues, it is the appellant

who has the right to choose the "method of appeal" and "[t]he non-appealing party does not have the option to alter this choice." According to the County, Maloney had no right to petition for a *de novo* trial of any factual issues after the County had already petitioned the circuit court for a judicial review of the administrative record. Second, the County argues, even if Maloney's status as the appellee did not preclude him from converting the review of the administrative record into a *de novo* appraisal of the facts, the issues for which review was sought foreclosed this avenue. The § 9-745(d) *de novo* review is available only when factual issues are before the court, but the issue in its appeal, says the County, was strictly a legal one.[1]

Neither of these arguments is persuasive.

### *1. The standard of review*

In contending that the circuit court incorrectly granted Maloney's request for a *de novo* evidentiary hearing pursuant to § 9-745(d), the County claims that the circuit court made a legal error. Accordingly, we exercise *de novo* review to decide whether the circuit court's interpretation of § 9-745(d) was legally correct. *Andrews & Lawrence Professional Services, LLC v. Mills*, --- Md. ---, 2020 WL 427876, at \*8 (filed Jan. 28, 2020) ("When

---

[1] In a three-word parenthetical aside, the county also suggests Maloney's response to the county's petition for judicial review was untimely filed. We will not consider this argument because it was not raised before the circuit court, *see* Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court . . . ."), and because the county fails to develop any argument with respect to this point, *see* Md. Rule 8-504(a)(6) (requiring that briefs contain "[a]rgument in support of the party's position on each issue").

reviewing questions of law, this Court reviews the decision of the circuit court . . . without deference.").

### 2. De novo *review was not foreclosed by County's initial election.*

The County is correct that our workers'-compensation statute gives a party aggrieved by a decision of the Workers' Compensation Commission "[a] [c]hoice of [a]ppellate [s]trategies." *Board of Education for Montgomery County v. Spradlin*, 161 Md. App. 155, 166 (2005). First, the party may request, under Lab. & Empl. § 9-745(c) and (e), a "routine" administrative appeal, in which the circuit court "reviews the record of the proceeding before the Commission and decides, purely as a matter of law, whether the Commission acted properly." *Id.* at 167. If the appealing party chooses this route, the circuit court's task is limited to deciding whether the Commission "justly considered all of the facts," "exceeded the powers granted to it," or "misconstrued the law and facts applicable in the case." Lab. & Empl. § 9-745(c). In determining whether the Commission "misconstrued . . . the facts," the circuit court decides only "whether the Commission's fact-finding was, as a matter of law, clearly erroneous because not supported by legally sufficient evidence." *Spradlin*, 161 Md. App. at 169.

Second, as an alternative to the "unadorned" administrative appeal, *Spradlin*, 161 Md. App. at 167, an aggrieved party may request, under Lab. & Empl. § 9-745(d), "a trial which essentially is *de novo*," *id.* (quoting *Richardson v. Home Mutual Life Insurance Co.*, 235 Md. 252, 255 (1964)). If the aggrieved party chooses this path, the circuit court engages in "fresh, *de novo* fact-finding" rather than simply deciding whether the Commission

misconstrued the facts. *Id.* at 173; *see also General Motors v. Bark*, 79 Md. App. 68, 76 (1989) ("[O]nce the circuit court embarks upon its *de novo* fact-finding mission, it is totally unconcerned with whether the Commission 'correctly construed the law and facts' or not."). This fact-finding can be done by a jury or by the circuit court itself in a bench trial. *Spradlin*, 161 Md. App. at 179.

In the "essentially" *de novo* trial, the ultimate decision of the Commission is still presumed *prima facie* correct by the reviewing court. Lab. & Empl. § 9-745(b)(1). Indeed, this is the way in which the § 9-745(d) proceeding is "essentially"—as opposed to entirely—a *de novo* trial; the parties are not starting from square one. *See Spradlin*, 161 Md. App. at 188–90 (explaining the "no less than four respects" in which the Commission's challenged decision serves as prologue to the circuit court's "essentially" *de novo* trial). But the presumption of correctness given to the Commission's decision does not bind the circuit court (or the jury) in its fact-finding mission. *See id.* at 168 n.4 ("Since both the initial fact finder and the supervening fact finder enjoy the same prerogative independently to assess credibility and independently to weigh evidence, they may with equal validity reach different conclusions even upon the same record." (emphasis removed)); *Egypt Farms, Inc. v. Lepley*, 49 Md. App. 171, 176 (1981) ("The court (or jury) . . . is not bound by the Commission's fact findings as is normally the case in administrative appeals, but is free to weigh the evidence (and the inferences from it) and reach entirely opposite conclusions."). Rather, the presumption serves primarily to shift the burden of proof in judicial-review actions in which the employer is the party aggrieved by the Commission's

- 9 -

decision. *See Bark*, 79 Md. App. at 80 (explaining that the presumption of correctness and the allocation of the burden on the challenger under the statutory predecessor to Lab. & Empl. § 9-745(b) are "largely meaningless" when the challenger is the claimant, who bears the burden in the initial proceeding before the Commission, but that they are significant when the employer petitions the circuit court for judicial review because "[i]t is then that the allocation of burdens switches").

In petitioning the circuit court for judicial review in this case, the County clearly chose the first of the aforementioned paths: an on-the-record judicial review of the Commission's decision. But this election was not as hard and fast as the County argues it was; Maloney was not inescapably bound by the County's procedural preference. The language of Lab. & Empl. § 9-745(d) makes plain that "*any party*" can request, "in accordance with the practice in civil cases," a *de novo* review of "any question of fact involved in the case." (Emphasis added.) *Cf.* Md. Rule 2-325 ("*Any party* may elect a trial by jury of any issue triable of right by a jury . . . ." (emphasis added)). And Maryland case law has confirmed that the statute means what it says. *See Baltimore County v. Kelly*, 391 Md. 64, 74 (2006) (explaining that as an alternative to the "routine appeal process," Lab. & Empl. § 9-745(d) "allows *any party* to 'submit to a jury any question of fact involved in the case'" (emphasis added)); *Spradlin*, 161 Md. App. at 176 ("*Either party on the appeal* to the circuit court may invoke the right to have a factual finding by the Commission determined *de novo* at the circuit court level." (emphasis added)); *id.* ("*Even though a party does not appeal*, he can raise issues contesting the findings and decision of the Commission *in an appeal taken*

*by the other party.*" (emphasis added) (quoting Maurice J. Pressman, *Workmen's Compensation in Maryland* § 4-22 (1970))); *see also Simmons v. Comfort Suites Hotel*, 185 Md. App. 203 (2009) (case in which the employer filed for judicial review of the Commission's decision in favor of the employee, although it was the employee who requested the jury trial in the circuit court pursuant to Lab. & Empl. § 9-745(d)).

In sum, the circuit court did not err in granting the request for a *de novo* review of the facts under Lab. & Empl. § 9-745(d) simply because it was Maloney who made the request. The County is correct that Lab. & Empl. § 9-745(d) does not apply to normal on-the-record administrative appeals. But this provision is the trigger for the "essentially" *de novo* trial. And that trigger can be pulled by *any party* to the judicial-review action.

*3. The issue raised in the petition for judicial review was not a purely legal issue and was therefore an appropriate subject for* de novo *review under Lab. & Empl. § 9-745(d).*

Even though either party may request *de novo* review under Lab. & Empl. § 9-745(d), a substantive "gatehouse requirement" must still be satisfied. *Spradlin*, 161 Md. App. at 178. The issue for which the *de novo* review is sought must be an issue of fact. *See* Lab. & Empl. § 9-745(d) ("On a motion of any party filed with the clerk of the court in accordance with the practice in civil cases, the court shall submit to a jury any *question of fact* involved in the case."). And the issue must also have been "actually decided by the Commission" in the first instance. *Spradlin*, 161 Md. at 177.

The County argues that the circuit court erred in permitting *de novo* review under Lab. & Empl. § 9-745(d) because the issue on appeal—whether the Commission erred in concluding that Maloney's injury arose "out of" and "in the course of" his employment—

- 11 -

was a purely legal question. The County is mistaken. The Court of Appeals has made it clear that, in most cases, the precise issue for which the County sought review was not a purely legal question, but rather a factual question—or at least a "mixed" question of law and fact. *See Calvo v. Montgomery County*, 459 Md. 315, 326 (2018) (noting that "[t]he question as to whether an injury arose out of or in the course of employment is ordinarily, like negligence or probable cause, *a mixed question of law and fact*" and ultimately concluding summary judgment was inappropriate because the undisputed facts permitted a reasonable conclusion *by a fact-finder* that the injury was sustained in the course of employment (emphasis added) (quoting *Harrison v. Central Construction Corp.*, 135 Md. 170, 180 (1919))). This has been the law since the earliest days of workers' compensation in Maryland.[2] The issue for which the County sought judicial review was therefore properly the subject of the *de novo* trial requested by Maloney under Lab. & Empl. § 9-745(d).

---

[2] *See, e.g., Whitehead v. Safway Steel Products, Inc.*, 304 Md. 67, 74 (1985) (noting that *a jury* should decide "whether an incident arose out of and in the course of employment" when there are conflicting facts, witnesses or inferences); *Abell v. Albert F. Goetze, Inc.*, 245 Md. 433, 436 (1967) ("The lower court, sitting without a jury, found *as a fact* that appellant 'did not receive an injury . . . in the course of his employment . . . .'" (emphasis added)); *Todd v. Easton Furniture Co.*, 147 Md. 352, 359 (1925) (question of whether employee's injury "arose out of and in the course of his employment" was appropriate for resolution by jury in a circuit-court judicial-review action, and not by court through a directed verdict, because of possible opposing inferences of fact to be drawn from uncontradicted evidence); *Jewel Tea Co. v. Weber*, 132 Md. 178, 182 (1918) (in a judicial-review action, "it was for the jury to determine the *questions of fact* presented by the appeal, and, among them, the question whether the [deceased's] injury . . . *arose out of and in the course of his employment*" (emphasis added)).

It is true that, in some cases, the issue of whether an injury arises out of and in the course of employment is treated as a pure question of law. But this is only when the parties stipulate that the facts are not in dispute and that "there is no dispute as to the inferences to be drawn from the facts" either. *Schwan Food Co. v. Frederick*, 241 Md. App. 628, 668 (2019) (quoting *Calvo*, 459 Md. at 326); *Coca-Cola Bottling Works v. Lilly*, 154 Md. 239, 244 (1928) ("[T]he question involved . . . is a mixed question of law and fact, [and] it only becomes a question of law for the court to decide, when the facts upon which the decision of the court is rendered have been ascertained and agreed upon by the parties, or when such facts are undisputed and there is no dispute as to the inferences to be drawn from them.") In this case, it is apparent from the arguments made in the parties' briefs, from the transcript of the evidentiary hearing before the circuit court, and from our analysis of the evidence introduced at trial that not all the facts in the case were undisputed and that opposing inferences could have been drawn even from the facts upon which the parties agreed.

## B. The circuit court's compensable-injury finding

In Maryland, employers must compensate "covered employee[s]" for certain accidental personal injuries. Lab. & Empl. § 9-501. A compensable "accidental personal injury" is one that "arises out of and in the course of employment." Lab. & Empl. § 9-101(b). At the end of the *de novo* evidentiary hearing, the circuit court concluded that Maloney's firehouse injury met these criteria—that it arose out of and in the course of his employment. The County's second appellate contention is that this conclusion by the circuit court was in error. To support its position, the County focuses mainly on the facts

- 13 -

that Maloney was not on duty when he was injured, that he was not required to stay at Station 33 that night, and that he chose to stay there for his own convenience.

These arguments are not persuasive.

### 1. The standard of review

"When the trial court holds an essential trial *de novo* under [Lab. & Empl.] § 9-745(d) to resolve a question of fact, the trial court has acted as trier of fact, and, as a result, we review the decision of the trial court as we would in any other bench trial." *McLaughlin v. Gill Simpson Electric*, 206 Md. App. 242, 253 (2012).[3] In *Breeding v. Koste*, 443 Md. 15

---

[3] In their discussion of the appropriate standard of review, the parties blurred the distinction between the standard applied by Maryland courts when reviewing the decision of the Commission in an "unadorned" administrative appeal, *Spradlin*, 161 Md. App. at 167, and in cases like the present one. In an unadorned administrative appeal, appellate courts look through the judgment of the circuit court and review the Commission's decision. *See Hranicka v. Chesapeake Surgical, Ltd.*, 443 Md. 289, 297 (2015) ("Generally, in an appeal from judicial review of an agency action, we review the agency's decision directly, not the decision of the circuit court[.]"). But when the procedures for an "essentially" *de novo* trial under Lab. & Empl. § 9-745(d) are triggered, the circuit court becomes "totally unconcerned with whether the Commission 'correctly construed the law and facts' or not." *General Motors Corp. v. Bark*, 79 Md. App. 68, 76 (1989). In this context, "the propriety of the Commission's original fact-finding is a matter of no consequence." *Spradlin*, 161 Md. App. at 173; *see also Egypt Farms v. Lepley*, 49 Md. App. 171, 176 (1981) ("The court [in an 'essentially' *de novo* trial] is not bound by the Commission's fact findings as is normally the case in administrative appeals, but is free to weigh the evidence (and the inferences from it) and reach entirely opposite conclusions.").

The Commission's decision is before us only insofar as it was *evidence* in the record developed by the circuit court to support its *independent conclusion* that Maloney's injury arose out of and in the course of his employment. *Cf. Bark*, 79 Md. App. at 85 ("Because of the very nature of *de novo* fact finding, we are not assessing . . . the propriety of the Commission's decision. What matters rather is the propriety of the [circuit judge's] decision.").

- 14 -

(2015), the Court of Appeals elaborated on the standard of appellate review applied, pursuant to Md. Rule 8-131(c), to bench trials:

> We give due regard to the trial court's role as fact-finder and will not set aside factual findings unless they are clearly erroneous. The appellate court must consider evidence produced at the trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed. Questions of law, however, require our non-deferential review. When the trial court's decision involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the [trial] courts conclusions are legally correct. Where a case involves both issues of fact and questions of law, this Court will apply the appropriate standard to each issue.

*Id.* at 27 (cleaned up).

As we explained above, the question of whether an injury arises out of and in the course of employment is a factual one—or a mixed question of law and fact—as long as there are facts in dispute or if opposing inferences can reasonably be drawn from undisputed facts. Accordingly, when the circuit court concludes after an "essentially" *de novo* trial that an injury arose out of or in the course of employment, we review that conclusion only for clear error. *See Spradlin*, 161 Md. App. at 216 ("[The circuit court] was affirmatively persuaded that the claimant had suffered an injury in the course of her employment, and the evidence amply supported that decision. The judge's ultimate *de novo* decision, therefore, was not *clearly erroneous*." (emphasis added)); *see also Abell v. Albert F. Goetze, Inc.*, 245 Md. 433, 439 (1967) ("We certainly cannot say [the judge's] finding, that the appellant did not receive an injury . . . in the course of his employment, was *clearly in error* . . . ." (emphasis added)); *Turner v. State, Office of the Public Defender*, 61 Md. App. 393, 405 (1985) (concluding that circuit judge's "factual findings" that claimant's injury did not arise out

- 15 -

of or in the course of his employment were not "erroneous at all, much less *clearly erroneous*" (emphasis added)). So long as there is "competent or material evidence in the record to support the court's conclusion[s]," *Scriber v. State*, 236 Md. App. 332, 345 (2018) (cleaned up), we will affirm.[4]

*2. The circuit court's conclusions that Maloney's injury arose out of and in the course of Maloney's employment were not clearly erroneous.*

Our workers'-compensation scheme is designed to compensate "only those injuries that are occupationally-related, and not those perils common to all mankind or to which the public is generally exposed." *Montgomery County v. Wade*, 345 Md. 1, 9 (1997). For that reason, to fall within the scope of the Workers' Compensation Act, the accidental injury complained of must have arisen (1) *out of* and (2) *in the course of* employment. *Calvo v. Montgomery County*, 459 Md. 315, 327 (2018). These two conditions precedent

---

[4] There are certainly cases in which Maryland appellate courts reviewed conclusions about whether an injury arises out of and in the course of employment without any deference, deciding the issue as a matter of law. But these cases arose in procedural contexts that differed from the present case, requiring the appellate courts to decide whether the evidence before the circuit court was *legally sufficient* to support a factual finding that an injury arose out of and in the course of employment. *See, e.g.*, *Roberts v. Montgomery County*, 436 Md. 591, 599, 608 (2014) (circuit court improperly granted employer's *motion for summary judgment* because, based on undisputed facts, injury arose out of and in the course of employment); *Perdue v. Brittingham*, 186 Md. 393, 406 (1946) (holding circuit court erred in denying employer's *motion for a directed verdict* because there was "no evidence legally sufficient to show that decedent's death arose either 'out of his employment' or 'in the course of his employment'"); *Schwan Food Co. v. Frederick*, 241 Md. App. 628, 668 (2019) (circuit court improperly granted *motion for judgment* because the evidence did not "permit[] but one conclusion with regard to whether [the claimant's] injury occurred in the course of his employment" (cleaned up)).

The reasoning of these cases, and others like them, is consistent with review for clear error when the circuit court decides these issues as matters of fact.

are not synonymous. *Wade*, 345 Md. at 9. Both must be established by the "facts and circumstances of each individual case." *Schwan Food Co. v. Frederick*, 241 Md. App. 628, 649 (2019) (quoting *Livering v. Richardson's Restaurant*, 374 Md. 566, 574 (2003). However, we do not require that the conditions be satisfied with equal force and instead apply "a rule of inverse relationships." *Montgomery County v. Smith*, 144 Md. App. 548, 579 (2002). "The stronger the facts are to show that an injury 'arose out of employment' the more relaxed the requirement that the injury be shown to be 'in the course of employment' and vice versa." *Id.*

### a. Arising "out of" employment

Determining whether an injury arises out of employment is a question of causation. *See Roberts v. Montgomery County*, 436 Md. 591, 604 (2014) ("'Arises out of' relates to the causal connection between the employment and the injury."). Often the connection between employment and the injury will be obvious. But if the injury does not have an "inherent connection" to the employment, *id.* at 605 (quoting 2 Jon L. Gelman, *Modern Workers Compensation* § 114:10 (1993)), we apply the positional-risk test, asking whether the employee would not have been injured "but for the fact that the conditions and obligations of employment placed the employee where the injury occurred," *id.* (cleaned up); *see also Prince George's County v. Proctor*, 228 Md. App. 579, 595 (2016). The test, adopted by the Court of Appeals in *Mulready v. University Research Corp.*, 360 Md. 51, 66 (2000), has at times been cast in terms that suggest the injured employee's job must have "*required* him to be in the place where he was injured." *Id.* at 59 (emphasis added)

- 17 -

(cleaned up). But the case law as a whole indicates that the positional-risk test is not so exacting. As Judge Irma Raker explained in *Livering v. Richardson's Restaurant*, "[t]he positional-risk test also encompasses injuries that occur during activities *incidental to employment* that are *not required specifically by the employment*." 374 Md. at 576 (emphasis added); *see also Jennifer v. State, Department of Public Safety & Correctional Services*, 176 Md. App. 211, 223 (2007) ("[A] 'reasonably incidental' relationship between the injury and the claimant's work is sufficient, in itself, to establish that an injury arose out of employment . . . ." (quoting *Mulready*, 360 Md. at 53)). This accords with the tendency of Maryland courts to "give[] the words 'arising out of' a liberal construction." *Austin v. Thrifty Diversified, Inc.*, 76 Md. App. 150, 157 (1988). It also allows courts looking for a causal connection between employment and injury to consider the "enlarged scope of the [employer–employee] relationship." *Sica v. Retail Credit Co.*, 245 Md. 606, 612 (1967).

In short, the positional-risk test "is essentially a 'but for' approach; thus, 'an injury is compensable if it would not have happened "but for" the fact that the conditions or obligations of the employment put the claimant in the position where he was injured.'" *Smith*, 144 Md. App. at 556–57 (quoting John D. Ingram, *The Meaning of "Arising Out of" Employment in Illinois Workers' Compensation Law*, 29 J. Marshall L. Rev. 153, 158 (1995))).

In concluding that Maloney's injury arose out of his employment, the circuit judge considered several cases, including *Montgomery County v. Wade*, 345 Md. 1 (1997). In

- 18 -

*Wade*, an off-duty police officer was injured while driving her personal patrol vehicle for a purely personal purpose: to visit her mother's home. The Court of Appeals had no trouble deciding that the circuit court did not err in concluding that the injury arose out of the officer's employment:

> The Montgomery County police department established a program whereby its officers were permitted to use their patrol cruisers *as personal vehicles when not on regularly scheduled duty*. It attached numerous and detailed regulations to this privilege and encouraged off-duty use of the [personal patrol vehicles] in order to, *inter alia*, alleviate budget and staffing concerns and increase police presence throughout the County. Officer Wade *would not have been operating a [personal patrol vehicle] but for her employment and consequent participation in the program*. Thus, *because her injuries stem from her use of the [personal patrol vehicle] within the department's guidelines, the requisite causal link exists*, and, under these circumstances, those injuries are properly considered to have arisen from her employment.

*Id.* at 10–11 (emphasis added).

The circuit court also considered our decision in *Austin v. Thrifty Diversified, Inc.*, 76 Md. App. 150 (1988). In *Austin*, a welder was electrocuted while using company equipment on his employer's premises—for a personal project and after he had clocked out for the day, but with the employer's permission. *Id.* at 153. The facts of the case made clear that the employer "did not receive, and was not intended to receive[,] any benefit from the personal project on which [the employee] was working at the time of his death," *id.* at 153–54, weighing against a finding that the activity was incidental to the welder's employment. Nevertheless, the Court concluded that it "may not be seriously contended that the death did not arise out of the deceased's employment." *Id.* at 159. As the Court explained,

> the [employee]'s death would not have ensued if it had not been for the employment; *it was only because the deceased was an employee of appellee*

- 19 -

> *that he was permitted to use appellee's equipment, on appellee's premises, for a personal project.* Moreover, the instrumentality of the death, the place where it happened, and the activity giving rise to it were the same as those he encountered in his employment . . . .

*Id.* (emphasis added).

Our analysis in *Prince George's County v. Proctor*, 228 Md. App. 579 (2016), yielded a conclusion to the contrary. In that case, an off-duty detective was leaving his home to pick up his assigned police cruiser from the County's fleet-maintenance facilities. *Id.* at 584. As he stepped onto his front porch, the detective found his two-year-old son standing in his way. *Id.* The detective jumped aside to avoid knocking his son off the porch, and in so doing injured his ankle and knee. *Id.* We held that the circuit court erred in concluding that the detective's injury arose out of his employment because "[i]t cannot reasonably be said that, but for the need to retrieve his police cruiser, [the detective] would not be at his home on his day off stepping through the front door onto his front porch." *Id.* at 595.

In light of the decisions in *Wade*, *Austin*, and *Proctor*, we cannot hold that the trial court in the present case clearly erred in concluding that Maloney's injury arose out of his employment by the County. Like the off-duty officer in *Wade* and the welder in *Austin*, Maloney would not have been hurt "but for the fact that the conditions . . . of employment placed [him] where the injury occurred." *Roberts*, 436 Md. at 604. It was his employee status that permitted Maloney to sleep in the fire station that night. He was where he was when he was hurt because of his job. It is not dispositive in our arising-out-of analysis that the County did not *require* Maloney to stay at Station 33 that night or that his sleeping at the station was not intended to benefit the County. His use of the bunk facilities was

"clearly incidental" to Maloney's role as a firefighter, *Wade*, 345 Md. at 10, as we explain in the next part of our analysis.

*b. Arising "in the course of" employment*

To be compensable, an accidental injury arising out of employment must also arise "in the course of" that employment. Lab. & Empl. § 9-101(b). This "depends on the time, place, and circumstances of [the] injury relative to [the] employment." *Calvo*, 459 Md. at 329 (citing *Livering*, 374 Md. at 576–77). Our cases have often explained that to meet this second requirement for compensability, injuries must occur (1) "during the period of employment," (2) "at a place where the employee reasonably may be in performance of his or her duties," and (3) "while fulfilling those duties or engaged in something incident thereto." *Frederick*, 241 Md. App. at 653 (quoting *Wade*, 345 Md. at 11). This formulation is not a precise rubric, however. These are factors to be considered, not essential elements, and the absence of one of these factors will not necessarily be dispositive.[5] Rather, deciding whether an injury arose in the course of employment is "a fact-specific inquiry." *State v.*

---

[5] For example, we have held that injuries do not occur "within the period of . . . employment" if they are sustained "after [the employee's] day's work [i]s finished." *Smith*, 144 Md. App. at 577. Nonetheless, Maryland appellate courts have held that even off-the-clock injuries may arise in the course of employment. *See, e.g.*, *Livering*, 374 Md. At 580–81 (issued one year after *Smith* was decided by our Court and holding a restaurant employee's injury, sustained when she visited the restaurant's premises to check her work schedule, arose in the course of employment); *Austin*, 76 Md. App. at 158 (noting that our courts "have allowed recovery for injuries which have been sustained . . . before the workday began, during coffee breaks, after formal working hours, and on weekends during recreational activities"). In those cases, the other factors—the place of injury and the nature of the injury-causing activity—were sufficient to establish a strong relationship between the employment and the injury.

*Okafor*, 225 Md. App. 279, 286 (2015). It requires the fact-finder to consider "the entire sphere and period of employment . . . and also whether the employee has placed himself outside his employment, and, if so, how far." *Proctor*, 228 Md. App. at 588 (quoting *Okafor*, 225 Md. App. at 286). To arise in the course of employment, injuries need not result from "actual manipulation of the tools of work" or be sustained during "the exact hours of work." *Livering*, 374 Md. at 577 (quoting *Wade*, 345 Md. at 12 n.6). They need only arise "within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment." *Wade*, 345 Md. at 11.

In *Montgomery County v. Smith*, our Court elaborated on the requisite relationship between the injury-causing activity and employment with an excerpt from Professor Arthur Larson's treatise:

> When seeking for a link by which to connect an activity with the employment, *one has gone a long way as soon as one has placed the activity physically in contact with the employment environment, and even further when one has associated the time of the activity somehow with the employment.* This done, the exact nature and purpose of the activity itself does not have to bear the whole load of establishing work connection, and consequently the employment-connection of that nature and purpose does not have to be as conspicuous as it otherwise might. Conversely, if the . . . activity takes place on some distant vacant lot, several hours after the day's work has ceased, some *independently convincing association with the employment* must be built up to overcome the initial presumption of disassociation with the employment established by the time and place factors.

144 Md. App. at 565–66 (emphasis added) (quoting 4 Arthur Larson, *Workers' Compensation Law* § 22.03 (2001)).

In contrast to the requirement that an injury arise "out of" employment, which focuses on the *existence* of a connection between the injury and the injured worker's employment,

the requirement that the injury arise "in the course" of employment is concerned with the *strength* of that connection. *Cf. Austin*, 76 Md. App. at 159 (explaining that deciding whether a death or injury arises "in the course of employment" requires "an analysis of *the extent to which the activity* out of which death [or injury] arose *is sufficiently work related* as to be an incident of employment" (emphasis added)).

In its bench opinion, the circuit court noted that our decision in *Austin* was "hard to distinguish or ignore." In that case, an off-duty welder was electrocuted using faulty employer-provided equipment. *Austin*, 76 Md. App. at 153. As in the present case, the employee's injury was sustained on the employer's premises but after the employee was off the clock for the day. *Id.* It does not appear to have been contested that the injury took place "at a place where the employee reasonably may be in performance of his or her duties," *Frederick*, 241 Md. App. at 653 (quoting *Wade*, 345 Md. at 11), since the accident occurred on the employer's premises. And the Court did not directly engage with the question of whether the employee's injury took place "during the period of employment," noting only that the electrocution took place "[s]hortly after the end of the deceased's shift had ended," *Austin*, 76 Md. App. at 153, and that our courts have allowed recovery for injuries sustained "before the work day began, during coffee breaks, after formal working hours, and on weekends during recreational activities," *id.* at 158. In deciding whether the employee's death arose in the course of his employment, the Court's analysis was focused on "the extent to which the activity out of which the death arose [was] *sufficiently work related* as to be an incident of employment." *Id.* at 159 (emphasis added).

- 23 -

Keeping in mind the "general social purpose" of the Workers' Compensation Act, the notion that the act does not insure workers against "the common perils of life," and "the expanding scope of the employer–employee relationship," *id.* at 157–58 (cleaned up), we concluded that the accident arose in the course of the welder's employment. This was because

> the employer customarily permitted its . . . employees to use its welding equipment to work on personal projects, provided that they requested permission to do so. Only employees were permitted to use the equipment. . . . Whenever an employer grants an employee permission to work on a private project, their relationship generally improves by promoting positive employee morale. . . . [A] direct, albeit intangible, benefit accrues to the employer.

*Id.* at 163–64. The customary nature of the activity and the incidental benefit it provided to the employer made the welder's after-hours, on-premises personal project "sufficiently work related" such that the employee could reasonably be said to have been engaged in something incident to his employment duties. *Id.* at 159. His injury, therefore, arose in the course of his employment. *Id.* at 164.

Central to the County's arguments is *Montgomery County v. Smith*, 144 Md. App. 548 (2002), another case that is difficult to distinguish or ignore. In *Smith*, an off-duty correctional officer was playing basketball in the gymnasium of the detention center where he worked. *Id* at 551. During the game, he injured both of his knees after he jumped and landed awkwardly. *Id.* The basketball court was made available to officers whenever inmates were not using it. *Id.* The injured officer later explained in an affidavit to the circuit court that he had been using the court the day he was injured "to maintain the high level of

physical fitness required . . . of a corrections officer." *Id.* at 552. The record also showed that use of the basketball court by the officers and their shift commanders was a common practice. *Id.*

This Court's analysis in *Smith* relied on the same factors outlined above, asking whether the guard's injury occurred "(1) within the period of employment, (2) at a place where the employee reasonably may be in the performance of his duties, and (3) while he [was] fulfilling those duties or engaged in doing something incident thereto." *Id.* at 558.[6] The Court also engaged in an extended review of cases dealing with off-the-clock injuries, focused on the extent to which the activities giving rise to those injuries might be considered "incidental" to employment. *Id.* at 560–77.

One of the out-of-state cases reviewed was *McNamara v. Town of Hamden*, 398 A.2d 1161 (Conn. 1978). The Connecticut court there explained that "[t]he meaning of the term incidental need not be defined as *compulsion by* or *benefit to* the employer in all cases." *Smith*, 144 Md. App. at 570 (emphasis added) (quoting *McNamara*, 398 A.2d at 1165). Rather, an activity will generally be considered "a regular incident and condition of the employment" if it is "an accepted and normal one." *Id.* (quoting *McNamara*, 398 A.2d at 1165–66); *cf. Livering*, 374 Md. at 580 ("The employer neither required nor prohibited employees from visiting the establishment to check the schedule, but it knew about and

---

[6] The Court separately analyzed the facts of the case under the "Larson Rule," a synthesis of factors used to decide whether injuries from recreational or social activities may be said to occur in the course of employment. *See Smith*, 144 Md. App. at 558 (quoting 4 Arthur Larson, *Workers' Compensation Law* § 22.01 (2001)).

- 25 -

acquiesced in the custom."). "If the activity is regularly engaged in on the employer's premises within the period of the employment, with the employer's approval or acquiescence, an injury occurring under those conditions shall be found to be compensable." *Smith*, 144 Md. App. at 570 (quoting *McNamara*, 398 A.2d at 1166).

Our Court ultimately concluded in *Smith* that although the facts of the officer's case "made 'a good start' in showing compensability by proving that his injury occurred on his employer's premises," *id.* at 566 (quoting 4 Arthur Larson, *Workers' Compensation Law* § 22.04(4)(b) (2001)), there was not enough other evidence to allow a fact-finder to conclude the accident arose in the course of his employment, *id.* at 578. Smith's injury was not sustained within the period of his employment because he was hurt playing basketball "after his day's work was finished." *Id.* at 577. Because he did not work in the gymnasium, the officer was not injured "at a place where he would reasonably be expected to be in the performance of his duties as a guard." *Id.* He was not fulfilling work-related duties when he was injured because he "was not hired to play basketball." *Id.* at 577–78. And we held that he was not engaged in an activity incident to his duties either. We explained that Smith's "post hoc subjective reasoning for playing basketball on the date of injury"—to stay in shape, as his employer required—was "too weak a reed to support the argument that his recreational activities were 'incident' to his job as a prison guard." *Id.* Nor would the Connecticut court's reasoning in *McNamara* turn the basketball game into an incident of Smith's employment: "his recreational activity was not shown to have been engaged in

- 26 -

'within the period of employment,' nor was basketball regularly engaged in by co-employees within the period of their employment." *Id.* at 571.

We admit that, in some ways, *Smith* and *Austin* are close cases, and they appear difficult to reconcile. The *Smith* Court did, however, explain what it thought distinguished the cases. The employers in both cases "may have derived some intangible good will by tolerating, but not encouraging on-premises after-hours activity." *Id.* at 569. But the welder's after-hours injury "bore a direct relationship to the work he did during the day. [He] was paid to weld, and he was hurt welding, as a direct result of defective equipment supplied by the employer." *Id.* And in Smith's case, the Court said, "no defective equipment was supplied by the County, and Smith was not paid to play basketball." *Id.* For the *Smith* Court, the injury-causing basketball game lacked the necessary "work-connection" to produce an injury arising in the course of Smith's employment. *Id.* at 559 (quoting 4 Arthur Larson, *Workmen's Compensation Law* § 22.04[3] (2001)).

With the record before us, we cannot conclude that the circuit court clearly erred in deciding that Maloney's case fell on the *Austin* side of the narrow divide between these cases—that Maloney's between-shifts stay at Station 33 was sufficiently work related to give rise to an injury in the course of his employment. It is true that, like the employees injured in *Austin* and *Smith*, Maloney was not on the clock when he was hurt. This means his injury did not occur during the "period of employment." *See Smith*, 144 Md. App. at 577 (holding prison guard's injury did not occur "within the period of his employment" because it "occurred after his day's work was finished"). And, as in *Smith*, Maloney was

not "at a place where he would reasonably be expected to be in the performance of his duties," since he was assigned to work at Station 23, not Station 33. But the circuit court still could have reasonably concluded that the other circumstances surrounding Maloney's injury evinced an "independently convincing association" between his presence at Station 33 at the time of his injury and his employment. *Smith*, 144 Md. App. at 566 (quoting 4 Arthur Larson, *Workers' Compensation Law* § 22.03 (2001)).

First, the record shows Maloney's off-duty use of the bunk facilities was an activity "customarily permitted" by the County. *Austin*, 76 Md. App. at 163. All witnesses before the Commission and the circuit court testified that it is a common practice for firefighters in Montgomery County to spend the night at fire stations—even in those to which they are not specifically assigned—to ensure timely arrival for early-morning shifts. Under certain circumstances, the witnesses said, the County even encouraged this practice. Moreover, unlike the use of the basketball court in *Smith*, use of stationhouse beds was an "accepted and normal" activity for *on-duty* firefighters as well. *Smith*, 144 Md. App. at 570 (quoting *McNamara*, 398 A.2d at 1165–66). And in this way, the circuit court could have reasonably concluded that sleeping at the station bore more of a "direct relationship to the work [Maloney] did during the day." *Id.* at 569.

Second, the court reasonably could have determined that, when he was injured, Maloney was engaged in "an activity whose *purpose* [was] related to the employment." *Wade*, 345 Md. at 11 (emphasis added). Maloney admitted that he stayed at the station for his convenience. But sleeping at Station 33 was convenient in that it made it easier for

Maloney *to get to work*. He did not stay there so that it would be easier to visit relatives, to go to a baseball game, or to buy a boat the next day. It was undisputed at trial that Maloney went to Station 33 simply "to read, shower and sleep," and that he would have gone home rather than sleep at the station if he hadn't had to be back at the academy at 6 a.m. the next morning (after working until 8:30 p.m. on the night of the injury). Maloney had volunteered to work overtime to assist the County in its efforts to recruit new firefighters, and this overtime assignment required him to work at least twenty-two-and-a-half hours over a two-day period, with only nine-and-a-half hours to rest between shifts. As he explained, Station 33 was a "slower" station that would allow him to rest up between his overtime shifts. The County does not argue that Maloney chose to sleep at Station 33 for any other purpose than to be able to be at the academy for the recruiting event by 6 a.m. the following morning. Unlike the guard in *Smith*, it cannot be said that Maloney's work-related justification for sleeping at the station was merely "post hoc subjective reasoning," *Smith*, 144 Md. App. at 577, designed to strengthen the relationship between his stay at the station and his work commitments.

Smith's admittedly "[s]elfish" reasons for staying at Station 33—saving himself time, ensuring he would get more sleep—are not irrelevant. But it is clear that the County benefited from making its fire houses available to off-duty firefighters. If for no other reason, the practice incentivized firefighters like Maloney to agree to perform long hours of extra work with minimal time off between the end of one work day and the beginning of the next. And our cases have consistently held that an accidental injury does not lie

- 29 -

outside the course of employment just because the injury-causing incidental activity benefits the employee, *see King Waterproofing Co. v. Slovsky*, 71 Md. App. 247, 254 (1987), or "serv[es] some purpose of his own," *Sica*, 245 Md. at 612 (citing *Watson v. Grimm*, 200 Md. 461, 470–71 (1952)).

Third, and finally, the distinction implicitly drawn by the circuit court between the nature of the activities involved in *Smith* and the present case, contrasting the use of employer-provided sleeping facilities with the use of employer-provided recreational facilities, is not illogical and certainly does not amount to, or indeed even approach, clear error. We think the circuit court could reasonably have concluded that the activity in which Maloney was engaged—sleeping at the station between shifts—did not place him as far outside his employment as Smith's after-work recreation placed him. *Cf. Proctor*, 228 Md. App. at 588 (explaining that the question before courts deciding whether an injury arose in the course of employment requires consideration of, inter alia, "whether the employee has placed himself outside his employment, and, if so, *how far*" (emphasis added)).

**Conclusion**

Even though Maloney was not the party who filed a petition for judicial review, he was permitted to invoke the "essentially" *de novo* trial provided for in Lab. & Empl. § 9-745(d). The issue for which the County sought review was also a proper subject for review by a jury. Therefore, the circuit court did not err in granting Maloney's request for *de novo* review under Lab. & Empl. § 9-745(d).

Finally, Judge Cho did not clearly err in concluding that Maloney's firehouse injury arose out of and in the course of his employment. But for his employment as a County firefighter, Maloney would not have been sleeping at Station 33 the night he was injured. And even though the injury was sustained when Maloney was off the clock, and in a place he would not typically be while performing work-related duties, it arose out of an activity that Judge Cho reasonably concluded was sufficiently employment-related.

**THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED. APPELLANT TO PAY COSTS.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0623s18cn.pdf